VILLAGE OF HOFFMAN ESTATES ET AL. *v.*
THE FLIPSIDE, HOFFMAN ESTATES, INC.

No. 80–1681.   Argued December 9, 1981—Decided March 3, 1982

490

MARSHALL, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, BLACKMUN, POWELL, REHNQUIST, and O'CONNOR, JJ., joined. WHITE, J., filed an opinion concurring in the judgment, *post*, p. 507. STEVENS, J., took no part in the consideration or decision of the case.

*Richard N. Williams* argued the cause and filed briefs for appellants.

*Michael L. Pritzker* argued the cause and filed a brief for appellee.*

---

*\*Ronald A. Zumbrun* and *John H. Findley* filed a brief for Community Action Against Drug Abuse as *amicus curiae* urging reversal.

*Charles A. Trost* filed a brief for American Businesses for Constitutional Rights as *amicus curiae* urging affirmance.

Briefs of *amici curiae* were filed for the State of Arkansas et al. by *Steve Clark*, Attorney General of Arkansas, *J. D. MacFarlane*, Attorney General of Colorado, *Carl R. Ajello*, Attorney General of Connecticut, *Richard S. Gebelein*, Attorney General of Delaware, *Jim Smith*, Attorney General of Florida, and *Mitchell D. Franks*, *David H. Leroy*, Attorney General of Idaho, *Linley E. Pearson*, Attorney General of Indiana, *Robert T.*

JUSTICE MARSHALL delivered the opinion of the Court.

This case presents a pre-enforcement facial challenge to a drug paraphernalia ordinance on the ground that it is unconstitutionally vague and overbroad. The ordinance in question requires a business to obtain a license if it sells any items that are "designed or marketed for use with illegal cannabis or drugs." Village of Hoffman Estates Ordinance No. 969–1978. The United States Court of Appeals for the Seventh Circuit held that the ordinance is vague on its face. 639 F. 2d 373 (1981). We noted probable jurisdiction, 452 U. S. 904 (1981), and now reverse.

I

For more than three years prior to May 1, 1978, appellee The Flipside, Hoffman Estates, Inc. (Flipside), sold a variety of merchandise, including phonographic records, smoking accessories, novelty devices, and jewelry, in its store located in the village of Hoffman Estates, Ill. (village).[1] On February

*Stephan*, Attorney General of Kansas, *William J. Guste, Jr.*, Attorney General of Louisiana, *James E. Tierney*, Attorney General of Maine, *Stephen H. Sachs*, Attorney General of Maryland, and *Paul F. Strain, Dennis M. Sweeney*, and *Linda H. Lamone*, Assistant Attorneys General, *Paul L. Douglas*, Attorney General of Nebraska, *Richard H. Bryan*, Attorney General of Nevada, *James R. Zazzali*, Attorney General of New Jersey, *Jeff Bingaman*, Attorney General of New Mexico, *Rufus L. Edmisten*, Attorney General of North Carolina, and *David S. Crump* and *James L. Wallace, Jr.*, Deputy Attorneys General, *Jan Eric Cartwright*, Attorney General of Oklahoma, *Leroy S. Zimmerman*, Attorney General of Pennsylvania, *Mark White*, Attorney General of Texas, *David L. Wilkinson*, Attorney General of Utah, and *Kenneth O. Eikenberry*, Attorney General of Washington; and for the Village of Wilmette, Illinois, by *Robert J. Mangler*.

[1] More specifically, the District Court found:

"[Flipside] sold literature that included 'A Child's Garden of Grass,' 'Marijuana Grower's Guide,' and magazines such as 'National Lampoon,' 'Rolling Stone,' and 'High Times.' The novelty devices and tobacco-use related items plaintiff displayed and sold in its store ranged from small commodities such as clamps, chain ornaments and earrings through cigarette hold-

20, 1978, the village enacted an ordinance regulating drug paraphernalia, to be effective May 1, 1978.[2] The ordinance makes it unlawful for any person "to sell any items, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs, as defined by Illinois Revised Statutes, without obtaining a license therefor." The license fee is $150. A business must also file affidavits that the licensee and its employees have not been convicted of a drug-related offense. Moreover, the business must keep a record of each sale of a regulated item, including the name and address of the purchaser, to be open to police inspection. No regulated item may be sold to a minor. A violation is subject to a fine of not less than $10 and not more than $500, and each day that a violation continues gives rise to a separate offense. A series of licensing guidelines prepared by the Village Attorney define "Paper," "Roach Clips," "Pipes," and "Paraphernalia," the sale of which is required to be licensed.[3]

---

ers, scales, pipes of various types and sizes, to large water pipes, some designed for individual use, some which as many as four persons can use with flexible plastic tubes. Plaintiff also sold a large number of cigarette rolling papers in a variety of colors. One of plaintiff's displayed items was a mirror, about seven by nine inches with the word 'Cocaine' painted on its surface in a purple color. Plaintiff sold cigarette holders, 'alligator clips,' herb sifters, vials, and a variety of tobacco snuff." 485 F. Supp. 400, 403 (ND Ill. 1980).

[2] The text of the ordinance is set forth in the Appendix to this opinion.

[3] The guidelines provide:

"LICENSE GUIDELINES FOR ITEMS, EFFECT, PARAPHERNALIA, ACCESSORY OR THING WHICH IS DESIGNED OR MARKETED FOR USE WITH ILLEGAL CANNABIS OR DRUGS

"Paper—white paper or tobacco oriented paper not necessarily designed for use with illegal cannabis or drugs may be displayed. Other paper of colorful design, names oriented for use with illegal cannabis or drugs and displayed are covered.

"Roach Clips—designed for use with illegal cannabis or drugs and therefore covered.

"Pipes—if displayed away from the proximity of nonwhite paper or tobacco oriented paper, and not displayed within proximity of roach clips,

After an administrative inquiry, the village determined that Flipside and one other store appeared to be in violation of the ordinance. · The Village Attorney notified Flipside of the existence of the ordinance, and made a copy of the ordinance and guidelines available to Flipside. Flipside's owner asked for guidance concerning which items were covered by the ordinance; the Village Attorney advised him to remove items in a certain section of the store "for his protection," and he did so. App. 71. The items included, according to Flipside's description, a clamp, chain ornaments, an "alligator" clip, key chains, necklaces, earrings, cigarette holders, glove stretchers, scales, strainers, a pulverizer, squeeze bottles, pipes, water pipes, pins, an herb sifter, mirrors, vials, cigarette rolling papers, and tobacco snuff. On May 30, 1978, instead of applying for a license or seeking clarification via the administrative procedures that the village had established for its licensing ordinances,[4] Flipside filed this lawsuit in the United States District Court for the Northern District of Illinois.

The complaint alleged, *inter alia*, that the ordinance is unconstitutionally vague and overbroad, and requested injunctive and declaratory relief and damages. The District Court, after hearing testimony, declined to grant a preliminary injunction. The case was tried without a jury on additional evidence and stipulated testimony. The court issued

---

or literature encouraging illegal use of cannabis or illegal drugs are not covered; otherwise, covered.

"Paraphernalia—if displayed with roach clips or literature encouraging illegal use of cannabis or illegal drugs it is covered."

[4] Ordinance No. 932–1977, the Hoffman Estates Administrative Procedure Ordinance, was enacted prior to the drug paraphernalia ordinance, and provides that an interested person may petition for the adoption of an interpretive rule. If the petition is denied, the person may place the matter on the agenda of an appropriate village committee for review. The Village Attorney indicated that no interpretive rules had been adopted with respect to the drug paraphernalia ordinance because no one had yet applied for a license. App. 68.

an opinion upholding the constitutionality of the ordinance, and awarded judgment to the village defendants. 485 F. Supp. 400 (1980).

The Court of Appeals reversed on the ground that the ordinance is unconstitutionally vague on its face. The court reviewed the language of the ordinance and guidelines and found it vague with respect to certain conceivable applications, such as ordinary pipes or "paper clips sold next to *Rolling Stone* magazine." 639 F. 2d, at 382. It also suggested that the "subjective" nature of the "marketing" test creates a danger of arbitrary and discriminatory enforcement against those with alternative lifestyles. *Id.*, at 384. Finally, the court determined that the availability of administrative review or guidelines cannot cure the defect. Thus, it concluded that the ordinance is impermissibly vague on its face.

## II

In a facial challenge to the overbreadth and vagueness of a law,[5] a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct.[6] If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates

---

[5] A "facial" challenge, in this context, means a claim that the law is "invalid *in toto*—and therefore incapable of any valid application." *Steffel* v. *Thompson*, 415 U. S. 452, 474 (1974). In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered. *Grayned* v. *City of Rockford*, 408 U. S. 104, 110 (1972).

[6] In making that determination, a court should evaluate the ambiguous as well as the unambiguous scope of the enactment. To this extent, the vagueness of a law affects overbreadth analysis. The Court has long recognized that ambiguous meanings cause citizens to "'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked." *Baggett* v. *Bullitt*, 377 U. S. 360, 372 (1964), quoting *Speiser* v. *Randall*, 357 U. S. 513, 526 (1958); see *Grayned, supra*, at 109; cf. *Young* v. *American Mini Theatres, Inc.*, 427 U. S. 50, 58–61 (1976).

no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.[7] A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.

The Court of Appeals in this case did not explicitly consider whether the ordinance reaches constitutionally protected conduct and is overbroad, nor whether the ordinance is vague in all of its applications. Instead, the court determined that the ordinance is void for vagueness because it is unclear in *some* of its applications to the conduct of Flipside and of other hypothetical parties. Under a proper analysis, however, the ordinance is not facially invalid.

## III

We first examine whether the ordinance infringes Flipside's First Amendment rights or is overbroad because it inhibits the First Amendment rights of other parties. Flipside makes the exorbitant claim that the village has imposed a "prior restraint" on speech because the guidelines treat the proximity of drug-related literature as an indicium that paraphernalia are "marketed for use with illegal cannabis or

---

[7] "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States* v. *Mazurie*, 419 U. S. 544, 550 (1975). See *United States* v. *Powell*, 423 U. S. 87, 92–93 (1975); *United States* v. *National Dairy Products Corp.*, 372 U. S. 29, 32–33, 36 (1963). "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker* v. *Levy*, 417 U. S. 733, 756 (1974). The rationale is evident: to sustain such a challenge, the complainant must prove that the enactment is vague " 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.' " *Coates* v. *City of Cincinnati*, 402 U. S. 611, 614 (1971). Such a provision simply has *no* core." *Smith* v. *Goguen*, 415 U. S. 566, 578 (1974).

drugs." Flipside also argues that because the presence of drug-related designs, logos, or slogans on paraphernalia may trigger enforcement, the ordinance infringes "protected symbolic speech." Brief for Appellee 25.

These arguments do not long detain us. First, the village has not directly infringed the noncommercial speech of Flipside or other parties. The ordinance licenses and regulates the sale of items displayed "with" or "within proximity of" "literature encouraging illegal use of cannabis or illegal drugs," Guidelines, *supra* n. 3, but does not prohibit or otherwise regulate the sale of literature itself. Although drug-related designs or names on cigarette papers may subject those items to regulation, the village does not restrict speech as such, but simply regulates the commercial marketing of items that the labels reveal may be used for an illicit purpose. The scope of the ordinance therefore does not embrace noncommercial speech.

Second, insofar as any *commercial* speech interest is implicated here, it is only the attenuated interest in displaying and marketing merchandise in the manner that the retailer desires. We doubt that the village's restriction on the manner of marketing appreciably limits Flipside's communication of information[8]—with one obvious and telling exception. The ordinance is expressly directed at commercial activity promoting or encouraging illegal drug use. If that activity is deemed "speech," then it is speech proposing an illegal transaction, which a government may regulate or ban entirely. *Central Hudson Gas & Electric Corp.* v. *Public Service Comm'n*, 447 U. S. 557, 563–564 (1980); *Pittsburgh Press Co.* v. *Human Relations Comm'n*, 413 U. S. 376, 388 (1973). Finally, it is irrelevant whether the ordinance has an

---

[8] Flipside explained that it placed items that the village considers drug paraphernalia in locations near a checkout counter because some are "point of purchase" items and others are small and apt to be shoplifted. App. 43. Flipside did not assert that its manner of placement was motivated in any part by a desire to communicate information to its customers.

overbroad scope encompassing protected commercial speech of other persons, because the overbreadth doctrine does not apply to commercial speech. *Central Hudson, supra,* at 565, n. 8.[9]

## IV

### A

A law that does not reach constitutionally protected conduct and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process. To succeed, however, the complainant must demonstrate that the law is impermissibly vague in all of its applications. Flipside makes no such showing.

---

[9] Flipside also argues that the ordinance is "overbroad" because it could extend to "innocent" and "lawful" uses of items as well as uses with illegal drugs. Brief for Appellee 10, 33–35. This argument seems to confuse vagueness and overbreadth doctrines. If Flipside is objecting that it cannot determine whether the ordinance regulates items with some lawful uses, then it is complaining of vagueness. We find that claim unpersuasive in this pre-enforcement facial challenge. See *infra,* at 497–504. If Flipside is objecting that the ordinance would inhibit innocent uses of items found to be covered by the ordinance, it is complaining of denial of substantive due process. The latter claim obviously lacks merit. A retailer's right to sell smoking accessories, and a purchaser's right to buy and use them, are entitled only to minimal due process protection. Here, the village presented evidence of illegal drug use in the community. App. 37. Regulation of items that have some lawful as well as unlawful uses is not an irrational means of discouraging drug use. See *Exxon Corp.* v. *Governor of Maryland,* 437 U. S. 117, 124–125 (1978).

The hostility of some lower courts to drug paraphernalia laws—and particularly to those regulating the sale of items that have many innocent uses, see, *e. g.,* 639 F. 2d 373, 381–383 (1981); *Record Revolution No. 6, Inc.* v. *City of Parma,* 638 F. 2d 916, 928 (CA6 1980), vacated and remanded, 451 U. S. 1013 (1981)—may reflect a belief that these measures are ineffective in stemming illegal drug use. This perceived defect, however, is not a defect of clarity. In the unlikely event that a state court construed this ordinance as prohibiting the sale of all pipes, of whatever description, then a seller of corncob pipes could not complain that the law is unduly vague. He could, of course, object that the law was not intended to cover such items.

The standards for evaluating vagueness were enunciated in *Grayned* v. *City of Rockford*, 408 U. S. 104, 108–109 (1972):

> "Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications" (footnotes omitted).

These standards should not, of course, be mechanically applied. The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow,[10] and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action.[11] Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process.[12] The Court has also expressed greater tolerance of

---

[10] *Papachristou* v. *City of Jacksonville*, 405 U. S. 156, 162 (1972) (dictum; collecting cases).

[11] See, *e. g.*, *United States* v. *National Dairy Products Corp.*, 372 U. S. 29 (1963). Cf. *Smith* v. *Goguen*, 415 U. S., at 574.

[12] See *Joseph E. Seagram & Sons, Inc.* v. *Hostetter*, 384 U. S. 35, 49 (1966); *McGowan* v. *Maryland*, 366 U. S. 420, 428 (1961).

enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.[13] And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.[14]

Finally, perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.[15]

## B

This ordinance simply regulates business behavior and contains a scienter requirement with respect to the alternative "marketed for use" standard. The ordinance nominally imposes only civil penalties. However, the village concedes that the ordinance is "quasi-criminal," and its prohibitory and stigmatizing effect may warrant a relatively strict test.[16]

---

[13] See *Barenblatt* v. *United States*, 360 U. S. 109, 137 (1959) (Black, J., with whom Warren, C. J., and Douglas, J., joined, dissenting); *Winters* v. *New York*, 333 U. S. 507, 515 (1948).

[14] See, *e. g.*, *Colautti* v. *Franklin*, 439 U. S. 379, 395 (1979); *Boyce Motor Lines* v. *United States*, 342 U. S. 337, 342 (1952); *Screws* v. *United States*, 325 U. S. 91, 101–103 (1945) (plurality opinion). See Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U. Pa. L. Rev. 67, 87, n. 98 (1960).

[15] See, *e. g.*, *Papachristou, supra; Grayned*, 408 U. S., at 109.

[16] The village stipulated that the purpose of the ordinance is to discourage use of the regulated items. App. 33. Moreover, the prohibitory and stigmatizing effects of the ordinance are clear. As the Court of Appeals remarked, "few retailers are willing to brand themselves as sellers of drug paraphernalia, and few customers will buy items with the condition of signing their names and addresses to a register available to the police." 639 F. 2d, at 377. The proposed register is entitled, "Retail Record for Items Designed or Marketed for Use with Illegal Cannabis or Drugs." Record, Complaint, App. B. At argument, counsel for the village admitted that the ordinance is "quasi-criminal." Tr. of Oral Arg. 4–5.

Flipside's facial challenge fails because, under the test appropriate to either a quasi-criminal or a criminal law, the ordinance is sufficiently clear as applied to Flipside.

The ordinance requires Flipside to obtain a license if it sells "any items, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs, as defined by the Illinois Revised Statutes." Flipside expresses no uncertainty about which drugs this description encompasses; as the District Court noted, 485 F. Supp., at 406, Illinois law clearly defines cannabis and numerous other controlled drugs, including cocaine. Ill. Rev. Stat., ch. 56½, ¶¶ 703 and 1102(g) (1980). On the other hand, the words "items, effect, paraphernalia, accessory or thing" do not identify the type of merchandise that the village desires to regulate.[17] Flipside's challenge thus appropriately focuses on the language "designed or marketed for use." Under either the "designed for use" or "marketed for use" standard, we conclude that at least some of the items sold by Flipside are covered. Thus, Flipside's facial challenge is unavailing.

### 1. "Designed for use"

The Court of Appeals objected that "designed . . . for use" is ambiguous with respect to whether items must be inherently suited only for drug use; whether the retailer's intent or manner of display is relevant; and whether the intent of a third party, the manufacturer, is critical, since the manufacturer is the "designer." 639 F. 2d, at 380–381. For the reasons that follow, we conclude that this language is not unconstitutionally vague on its face.

The Court of Appeals' speculation about the meaning of "design" is largely unfounded. The guidelines refer to "pa-

---

[17] The District Court apparently relied principally on the growing vernacular understanding of "paraphernalia" as drug-related items, and therefore did not separately analyze the meaning of "designed or marketed for use." 485 F. Supp., at 405–407. We agree with the Court of Appeals that a regulation of "paraphernalia" alone would not provide much warning of the nature of the items regulated. 639 F. 2d, at 380.

per of colorful design" and to other specific items as conclusively "designed" or not "designed" for illegal use.[18] A principal meaning of "design" is "[t]o fashion according to a plan." Webster's New International Dictionary of the English Language 707 (2d ed. 1957). Cf. *Lanzetta* v. *New Jersey*, 306 U. S. 451, 454, n. 3 (1939). It is therefore plain that the standard encompasses at least an item that is principally used with illegal drugs by virtue of its objective features, *i. e.*, features designed by the manufacturer. A business person of ordinary intelligence would understand that this term refers to the design of the manufacturer, not the intent of the retailer or customer. It is also sufficiently clear that items which are principally used for nondrug purposes, such as ordinary pipes, are not "designed for use" with illegal drugs. Moreover, no issue of fair warning is present in this case, since Flipside concedes that the phrase refers to structural characteristics of an item.[19]

---

[18] The guidelines explicitly provide that "white paper . . . may be displayed," and that "Roach Clips" are "designed for use with illegal cannabis or drugs *and therefore* covered" (emphasis added). The Court of Appeals criticized the latter definition for failing to explain what a "roach clip" is. This criticism is unfounded because that technical term has sufficiently clear meaning in the drug paraphernalia industry. Without undue burden, Flipside could easily determine the meaning of the term. See American Heritage Dictionary of the English Language 1122 (1980) (defining "roach" as "[t]he butt of a marijuana cigarette"); R. Lingeman, Drugs from A to Z: A Dictionary 213–214 (1969) (defining "roach" and "roach holder"). Moreover, the explanation that a retailer may display certain paper "not necessarily designed for use" clarifies that the ordinance at least embraces items that are necessarily designed for use with cannabis or illegal drugs.

[19] "It is readily apparent that under the Hoffman Estates scheme, the 'designed for use' phrase refers to the physical characteristics of items deemed *per se* fashioned for use with drugs; and that, if any intentional conduct is implicated by the phrase, it is the intent of the 'designer' (i. e. patent holder or manufacturer) whose intent for an item or 'design' is absorbed into the physical attributes, or structural 'design' of the finished product." Brief for Appellee 42–43. Moreover, the village President described drug paraphernalia as items "*[m]anufactured* for that purpose and marketed for that purpose." App. 82 (emphasis added).

The ordinance and guidelines do contain ambiguities. Nevertheless, the "designed for use" standard is sufficiently clear to cover at least some of the items that Flipside sold. The ordinance, through the guidelines, explicitly regulates "roach clips." Flipside's co-operator admitted that the store sold such items, see Tr. 26, 30, and the village Chief of Police testified that he had never seen a "roach clip" used for any purpose other than to smoke cannabis. App. 52. The Chief also testified that a specially designed pipe that Flipside marketed is typically used to smoke marihuana. *Ibid.* Whether further guidelines, administrative rules, or enforcement policy will clarify the more ambiguous scope of the standard in other respects is of no concern in this facial challenge.

### 2. "Marketed for use"

Whatever ambiguities the "designed . . . for use" standard may engender, the alternative "marketed for use" standard is transparently clear: it describes a retailer's intentional display and marketing of merchandise. The guidelines refer to the display of paraphernalia, and to the proximity of covered items to otherwise uncovered items. A retail store therefore must obtain a license if it deliberately displays its wares in a manner that appeals to or encourages illegal drug use. The standard requires scienter, since a retailer could scarcely "market" items "for" a particular use without intending that use.

Under this test, Flipside had ample warning that its marketing activities required a license. Flipside displayed the magazine High Times and books entitled Marijuana Grower's Guide, Children's Garden of Grass, and The Pleasures of Cocaine, physically close to pipes and colored rolling papers, in clear violation of the guidelines. As noted above, Flipside's co-operator admitted that his store sold "roach clips," which are principally used for illegal purposes. Finally, in the

same section of the store, Flipside had posted the sign, "You must be 18 or older to purchase any head supplies."[20]  Tr. 30.

## V

The Court of Appeals also held that the ordinance provides insufficient standards for enforcement.  Specifically, the court feared that the ordinance might be used to harass individuals with alternative lifestyles and views.  639 F. 2d, at 384.  In reviewing a business regulation for facial vagueness, however, the principal inquiry is whether the law affords fair warning of what is proscribed.  Moreover, this emphasis is almost inescapable in reviewing a pre-enforcement challenge to a law.  Here, no evidence has been, or could be, introduced to indicate whether the ordinance has been enforced in a discriminatory manner or with the aim of inhibiting unpopular speech.  The language of the ordinance is sufficiently clear that the speculative danger of arbitrary enforcement does not render the ordinance void for vagueness.  Cf. *Papachristou* v. *City of Jacksonville*, 405 U. S. 156, 168–171 (1972); *Coates* v. *City of Cincinnati*, 402 U. S. 611, 614 (1971).

We do not suggest that the risk of discriminatory enforcement is insignificant here.  Testimony of the Village Attorney who drafted the ordinance, the village President, and the Police Chief revealed confusion over whether the ordinance applies to certain items, as well as extensive reliance on the "judgment" of police officers to give meaning to the ordinance and to enforce it fairly.  At this stage, however, we are not prepared to hold that this risk jeopardizes the entire ordinance.[21]

---

[20] The American Heritage Dictionary of the English Language 606 (1980) gives the following alternative definition of "head": "*Slang*.  One who is a frequent user of drugs."

[21] The theoretical possibility that the village will enforce its ordinance against a paper clip placed next to Rolling Stone magazine, 639 F. 2d, at

Nor do we assume that the village will take no further steps to minimize the dangers of arbitrary enforcement. The village may adopt administrative regulations that will sufficiently narrow potentially vague or arbitrary interpretations of the ordinance. In economic regulation especially, such administrative regulation will often suffice to clarify a standard with an otherwise uncertain scope. We also find it significant that the village, in testimony below, primarily relied on the "marketing" aspect of the standard, which does not require the more ambiguous item-by-item analysis of whether paraphernalia are "designed for" illegal drug use, and which therefore presents a lesser risk of discriminatory enforcement. "Although it is possible that specific future applications . . . may engender concrete problems of constitutional dimension, it will be time enough to consider any such problems when they arise." *Joseph E. Seagram & Sons, Inc.* v. *Hostetter*, 384 U. S. 35, 52 (1966).[22]

## VI

Many American communities have recently enacted laws regulating or prohibiting the sale of drug paraphernalia.

---

382, is of no due process significance unless the possibility ripens into a prosecution.

[22] The Court of Appeals also referred to potential Fourth Amendment problems resulting from the recordkeeping requirement, which "implies that a customer who purchases an item 'designed or marketed for use with illegal cannabis or drugs' intends to *use* the item with illegal cannabis or drugs. A further implication could be that a customer is subject to police scrutiny or even to a search warrant on the basis of the purchase of a legal item." *Id.*, at 384. We will not address these Fourth Amendment issues here. In a pre-enforcement challenge it is difficult to determine whether Fourth Amendment rights are seriously threatened. Flipside offered no evidence of a concrete threat below. In a postenforcement proceeding Flipside may attempt to demonstrate that the ordinance is being employed in such an unconstitutional manner, and that it has standing to raise the objection. It is appropriate to defer resolution of these problems until such a showing is made.

To determine whether these laws are wise or effective is not, of course, the province of this Court. See *Ferguson* v. *Skrupa*, 372 U. S. 726, 728–730 (1963). We hold only that such legislation is not facially overbroad or vague if it does not reach constitutionally protected conduct and is reasonably clear in its application to the complainant.

Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS took no part in the consideration or decision of this case.

APPENDIX TO OPINION OF THE COURT

Village of Hoffman Estates Ordinance No. 969–1978

AN ORDINANCE AMENDING THE MUNICIPAL CODE OF THE VILLAGE OF HOFFMAN ESTATES BY PROVIDING FOR REGULATION OF ITEMS DESIGNED OR MARKETED FOR USE WITH ILLEGAL CANNABIS OR DRUGS

WHEREAS, certain items designed or marketed for use with illegal drugs are being retailed within the Village of Hoffman Estates, Cook County, Illinois, and

WHEREAS, it is recognized that such items are legal retail items and that their sale cannot be banned, and

WHEREAS, there is evidence that these items are designed or marketed for use with illegal cannabis or drugs and it is in the best interests of the health, safety and welfare of the citizens of the Village of Hoffman Estates to regulate within the Village the sale of items designed or marketed for use with illegal cannabis or drugs.

NOW THEREFORE, BE IT ORDAINED by the President and Board of Trustees of the Village of Hoffman Estates, Cook County, Illinois as follows:

*Section 1:* That the Hoffman Estates Municipal Code be amended by adding thereto an additional Section, Section 8–7–16, which additional section shall read as follows:

### Sec. 8–7–16—ITEMS DESIGNED OR MARKETED FOR USE WITH ILLEGAL CANNABIS OR DRUGS

A. License Required:

It shall be unlawful for any person or persons as principal, clerk, agent or servant to sell any items, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs, as defined by Illinois Revised Statutes, without obtaining a license therefor. Such licenses shall be in addition to any or all other licenses held by applicant.

B. Application:

Application to sell any item, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs shall, in addition to requirements of Article 8–1, be accompanied by affidavits by applicant and each and every employee authorized to sell such items that such person has never been convicted of a drug-related offense.

C. Minors:

It shall be unlawful to sell or give items as described in Section 8–7–16A in any form to any male or female child under eighteen years of age.

D. Records:

Every licensee must keep a record of every item, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs which is sold and this record shall be open to the inspection of any police officer at any time during the hours of business. Such record shall contain the name and address of the purchaser, the name and quantity of the product, the date and time of the sale, and the licensee or agent of the licensee's signature, such records shall be retained for not less than two (2) years.

E.  Regulations:
    The applicant shall comply with all applicable regulations
    of the Department of Health Services and the Police
    Department.

*Section 2:* That the Hoffman Estates Municipal Code be
amended by adding to Sec. 8–2–1 Fees: Merchants (Products)
the additional language as follows:

    Items designed or marketed for use with illegal cannabis
    or drugs $150.00

*Section 3:* Penalty.  Any person violating any provision of
this ordinance shall be fined not less than ten dollars ($10.00)
nor more than five hundred dollars ($500.00) for the first of-
fense and succeeding offenses during the same calendar year,
and each day that such violation shall continue shall be
deemed a separate and distinct offense.

*Section 4:* That the Village Clerk be and is hereby author-
ized to publish this ordinance in pamphlet form.

*Section 5:* That this ordinance shall be in full force and ef-
fect May 1, 1978, after its passage, approval and publication
according to law.

JUSTICE WHITE, concurring in the judgment.

I agree that the judgment of the Court of Appeals must be
reversed.   I do not, however, believe it necessary to discuss
the overbreadth problem in order to reach this result.   The
Court of Appeals held the ordinance to be void for vagueness;
it did not discuss any problem of overbreadth.   That opinion
should be reversed simply because it erred in its analysis of
the vagueness problem presented by the ordinance.

I agree with the majority that a facial vagueness challenge
to an economic regulation must demonstrate that "the enact-
ment is impermissibly vague in all of its applications." *Ante,*
at 495.   I also agree with the majority's statement that the
"marketed for use" standard in the ordinance is "sufficiently
clear."   There is, in my view, no need to go any further: If it

is "transparently clear" that some particular conduct is restricted by the ordinance, the ordinance survives a facial challenge on vagueness grounds.

Technically, overbreadth is a standing doctrine that permits parties in cases involving First Amendment challenges to government restrictions on noncommercial speech to argue that the regulation is invalid because of its effect on the First Amendment rights of others not presently before the Court. *Broadrick* v. *Oklahoma*, 413 U. S. 601, 612–615 (1973). Whether the appellee may make use of the overbreadth doctrine depends, in the first instance, on whether or not it has a colorable claim that the ordinance infringes on constitutionally protected, noncommercial speech of others. Although appellee claims that the ordinance does have such an effect, that argument is tenuous at best and should be left to the lower courts for an initial determination.

Accordingly, I concur in the judgment reversing the decision below.