CITY OF WHITEHALL, APPELLEE, *v.* FERGUSON, APPELLANT.
CITY OF WHITEHALL, APPELLEE, *v.* MILLER, APPELLANT.

(No. 83AP-517, -518, -519 and -520—
Decided March 13, 1984.)

Mr. Gregory S. Lashutka, city attorney, Mr. Ronald J. O'Brien, prosecuting attorney, Mr. David E. Tingley and Mr. Ted Zwayer, city attorney, for appellees.

Mr. George C. Rogers, for appellants.

WHITESIDE, J. In these consolidated appeals, defendants, Glen Ferguson and Roger Miller, appeal from their convictions in the Franklin County Municipal Court of offenses relating to the sale of drug paraphernalia, in violation of a Whitehall ordinance, defendant Ferguson having been convicted of two counts of sale of drug paraphernalia, one involving an apogee bong and the other a wooden pipe with screens, and defendant Miller being convicted of two counts of possession of drug paraphernalia with the intent to sell involving the same apogee bong and wooden pipe.

The first assignment of error involves the nature of the two pipes, an apogee bong being a water pipe, and the other pipe being a wooden pipe with screens. Section 533.12 of the Whitehall Code defines "drug paraphernalia," as follows:

"(a) 'Drug paraphernalia' means all equipment, products and materials of any kind, which are used, intended for use or designed for use, in * * * injecting, ingesting, inhaling, enhancing the effect of or otherwise introducing into the human body a controlled substance, as defined in Ohio R.C. Chapter 3719. It includes, but is not limited to:

"* * *

"(6) Diluents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose and lactose, used, intended for use or designed for use in cutting controlled substances;

"(7) Separation gins and sifters used, intended for use or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining marihuana;

"(8) Blenders, bowls, containers, spoons, and mixing devices used, intended for use or designed for use in compounding controlled substances;

"* * *

"(12) Objects used, intended for use or designed for use in ingesting, inhaling or otherwise introducing marihuana, cocaine, hashish or hashish oil into the human body, such as:

"(A) Metal, wooden, acrylic, glass, stone, plastic, ceramic pipes with or without a screen, permanent screens, hashish heads or punctured metal bowls;

"(B) Water pipes;

"(C) Carburetion tubes and devices;

"(D) Smoking and carburetion masks;

"(E) Roach clips: meaning objects used to hold burning material, such as a marihuana cigarette, that has become

too small or too short to be held in the hand;

"(F) Miniature cocaine spoons and cocaine viles;

"(G) Chamber pipes;

"(H) Carburetor pipes;

"(I) Electric pipes;

"(J) Air-driven pipes;

"(K) Chillums;

"(L) Bongs;

"(M) Ice pipes or chillers; and

"(N) Rolling paper and rolling machines."

Predicated upon the evidence, including the testimony of many witnesses, both expert and lay, the trial court concluded that both the apogee bong and the wooden pipe with screens involved were drug paraphernalia within this definition, the court noting that, predicated upon the evidence, it found that: "* * * The only real and intended use of the two items comprising the prosecution was for purpose of introducing marihuana, cocaine or hashish into the human body."

There was ample evidence supporting this finding of the trial court. Several witnesses testified for the prosecution that the only practical use for the two pipes was for smoking controlled substances. One of the witnesses, Sergeant Barlow, testified merely that, because of the size of the bowl, it would be easier to smoke marijuana, rather than tobacco, in the pipes. The arresting officers testified that the two pipes were similar to those that they had seen used for smoking marijuana. An expert witness for the city, a maker and seller of Briar smoking pipes, testified that the apogee bong, a water pipe, would not be suitable for smoking tobacco because the bowl was too small and the wooden pipe had a large enough bowl to smoke tobacco, but that the metal screens sold with it were not necessary for smoking tobacco. This witness further testified that, although he did not sell water pipes, he was familiar with water pipes used for

smoking tobacco, and that the apogee bong in question was not that type of pipe and that he had seen no such pipe in Europe where he had visited a museum containing the largest display of water pipes he had ever seen.

Two other witnesses testified that both the bong, or water pipe, and the wooden pipe were of the type used for consumption of controlled substances, especially marijuana or hashish. These witnesses also testified that screens of the type included with the sale of the wooden pipe were ordinarily used for the purpose of smoking marijuana to prevent marijuana seeds from being inhaled into the mouth. While several of the witnesses indicated that it might be possible to smoke tobacco in the pipes, ordinarily the pipes would be used for smoking a controlled substance, particularly marijuana or hashish. As one witness stated on cross-examination with respect to the wooden pipe: "I would imagine that tobacco could be smoked in it. In my experience, I have not seen tobacco smoked in a instrument such as that." Another witness testified that the purpose of the bong pipe was "primarily for the ingestion of marijuana or hashish." He also testified that, in his experience, he had never known anyone to use items similar to either the bong or wooden pipe for smoking tobacco.

While involving an ordinance prohibiting the sale of paraphernalia "designed or marketed" for use with illegal drugs, the Supreme Court in *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, in discussing application of the word "designed" in this context, rejected a contention that such purpose must be exclusive and stated at 501: "It is therefore plain that the standard encompasses at least an item that is principally used with illegal drugs by virtue of its objective features, *i.e.,* features designed by the manufacturer." The court

went on to state that: "A business person of ordinary intelligence would understand that this term refers to the design of the manufacturer, not the intent of the retailer or customer." *Id.*

Defendant Miller testified that the apogee bong pipe, a water pipe, was specifically adapted to smoking natural tobacco and certain other herbs, and contended that he sold both in his store. The trial court rejected his testimony, which it was entitled to do.

In addition, defendants produced a patent for the apogee bong pipe, contending that the patent indicated the pipe is designed for smoking tobacco. A careful reading of the patent, however, does not so indicate, the patent in no place indicating that the pipe is suitable for smoking tobacco, although it does contain a dictionary definition of water pipe as a tobacco-smoking device. However, the patent also quotes from Volumes 17 and 22 of the Encyclopaedia Britannica (see "pipe smoking" and "tobacco pipe"), which, although referring to cleansing the smoke of a tobacco pipe by drawing it through water, also indicate that one such pipe had been used in southern Africa, which pipe "cooled and mitigated the effects of hemp smoke by drawing it through a horn of water." A referral to the dictionary definitions of both marijuana and hashish indicates that both are forms of hemp. For whatever reason, in no place in the lengthy patent definition of structure and operation is there any reference to what substances are to be smoked in the pipe.

In short, there is nothing in the patent from which it could be determined whether or not the pipe is designed for smoking tobacco, rather than marijuana or hashish, but the expert testimony in this case indicates that the principal use of such a pipe would be for smoking marijuana or hashish or some other controlled substance. In other words, the prosecution evidence supports the trial court's findings if the trial court did not believe defendant Miller's testimony to the contrary.

Defendants raise six assignments of error, as follows:

"I. The trial court erred in determining that water pipes and wooden pipes with or without screens are per se 'drug paraphernalia' under the Whitehall ordinance.

"II. The trial court erred in failing to require proof that the objects were drug paraphernalia because they were designed for use to ingest marijuana.

"III. The U.S. and Ohio Constitutions require that defendants be given notice of the charges against them and conviction on grounds other than those of which a defendant is given notice is unconstitutional.

"IV. The total lack of evidence on the knowledge of defendants of the uses to which the buying police officers were going to put the water pipe and wood pipe, which proof of knowledge is required by the ordinance constitutes a violation of due process and equal protection of the law.

"V. The trial court erred in considering the fact that defendants removed different items voluntarily from the store after the ordinance became effective was direct evidence of knowledge or intent that the remaining items were unlawful.

"VI. The trial court erred when it held constitutional the crime charged against Roger Miller which was solely a mental state without an act forbidden by law."

The foregoing discussion disposes of the first two assignments of error. The trial court did not find that the two pipes were *per se* drug paraphernalia but, instead, predicated its finding upon the evidence, the trial court noting each of these expert witnesses, Mr. Pogue, Dr. Reardon and Mr. Murphy, were unanimous in their convictions that, "in their opinion, the objects such as City's

exhibit 1 and 2 were used exclusively for the inhaling of controlled substances and that it has been their experience that they had never come into contact with a person or persons who ever used City's exhibit 1 and 2 for smoking tobacco." The trial court apparently required a more strict test than necessary, referring to the use as being "exclusively" for inhaling of a controlled substance; whereas, the proper standard, both from the language of the ordinance and from *Hoffman, supra,* is that the principal use of the item is for illegal drug use. Accordingly, the testimony of some of the witnesses that it might be possible to smoke tobacco, even natural tobacco, in the pipes does not detract from the testimony of every witness, except defendant Miller, that the principal, if not exclusive, designed use of the two pipes would be for smoking either hashish or marijuana. There was ample evidence that the pipes were designed to smoke marijuana. Neither the first nor second assignment of error is well-taken.

By the third assignment of error, defendants contend that they were not given proper notice of the charges against them. We find no merit to this contention. Depending upon which count, and which defendant, the affidavits allege that the defendant did either sell or possess drug paraphernalia, being either an apogee bong or a water pipe; namely, "an object designed for use in inhaling marijuana * * * knowing it would be used to inhale or introduce into the human body a controlled substance * * *." This is sufficient specificity to advise the defendants of that with which they were charged. Defendants predicate their argument in support of this assignment of error upon the patent to which we have previously referred and contend that the expert opinion evidence should have no bearing upon the design of the pipes in question, which is the intent of the manufacturer.

First, as we have noted, the patent pertains only to the apogee bong and in no way indicates any intent of the designer that the pipe not be used for smoking marijuana or hashish, much less that it even is designed for use for smoking tobacco.

In short, there is nothing in the patent suggesting what substance should be smoked in the pipe, and the expert testimony indicates that, by design of the pipe, it is particularly adapted for smoking marijuana or hashish. Defendant Miller's own testimony indicates he had no difficulty in understanding the charge since he testified as to other purposes for which the pipe could be put. As noted by the Supreme Court in *Hoffman,* at 501, the intent of the manufacturer is to be determined by the "objective features," of the pipe, which means the "features designed by the manufacturer." The third assignment of error is not well-taken.

The fourth assignment of error raises an issue as to the meaning and intent of the Whitehall ordinance in defining the crime of possession or sale of drug paraphernalia. Unfortunately, the ordinance does not merely prohibit the sale of drug paraphernalia or the possession of drug paraphernalia for sale but, instead, Section 533.13(b) states:

"It is unlawful for any person to deliver, sell or possess with intent to deliver or sell, drug paraphernalia, knowing that it shall be used to * * * inject, ingest, inhale or otherwise introduce into the human body a controlled substance in violation of this chapter."

Defendants, thus, contend that, since the two pipes in question were purchased by a police officer who had no intent to use them for any purpose other than evidence, defendants cannot be found guilty of violating the ordinance since there is no intent on the part of the police-officer purchaser to use the pipes to inject, ingest, inhale or other-

wise introduce a controlled substance into his body.

Were a violation of this ordinance dependent upon the subjective intent of the purchaser as to use of the purchased items being known to the seller, there would be some merit to defendants' contention. In fact, as defendants point out, the Utah Supreme Court did reach such a conclusion, finding that the language of the Utah law is such: "* * * as to strictly require that a person *know* that the buyer will use the paraphernalia for illegal purposes." Thus, that court reasoned that, since the buyer was a police informer, and "intended only to buy the items to gather evidence * * * it is legally and factually impossible for the appellant to have known that the items sold would be used for illicit purposes. * * *" See *State* v. *Murphy* (1983), 674 P.2d 1220, 1225.

We do not so construe the Whitehall ordinance. Rather, an objective standard must be used in determining the seller's knowledge of the buyer's intent or knowledge. Thus, if the evidence is such that it indicates that the seller anticipated that the buyer would use the drug paraphernalia sold for the purpose of ingesting or inhaling a controlled substance, the seller would be guilty of the offense, even though the buyer may have had a secret intent to use the paraphernalia for some other purpose, such as evidence at a criminal trial as in this case. Use of an objective, rather than a subjective, standard for determining the intended use of the drug paraphernalia is manifestly necessary with respect to possession of drug paraphernalia for sale. Knowledge of actual use of the buyer would be impossible when the offense is possession for sale, rather than sale, since in many instances there will have been no buyer to have a subjective intent. Thus, the natural inference is that the buyer intends to use the drug paraphernalia for its normal and natural purposes and

uses. This is the only reasonable inference as to intended use of drug paraphernalia. Surely, defendant Ferguson would not have sold the drug paraphernalia to the police officer had he known it was to be used as evidence against him. However, under the Utah decision relied upon by defendants, this would be the most appropriate time to sell the paraphernalia, for under those circumstances, there could be no finding of guilt.

Obviously, the seller's knowledge of the intent of the buyer is predicated upon the surrounding circumstances known to the seller. Here, not only did the seller, Ferguson, sell the items to the police officer without any inquiry, he also indicated to the officer that he had included screens with the wooden pipe because the buyer might need them. There was evidence that such screens are necessary for smoking marijuana, but not tobacco. Although defendant Miller testified that these pipes could be used for smoking natural tobacco and certain herbs, the seller made no inquiry of the officer buying the pipe as to whether he wished to purchase any such substances to use in the pipes. Thus, judged by an objective, rather than a subjective, standard of the buyer's intended use, as known to the seller, or the potential buyer's use as known to the potential seller possessing the drug paraphernalia, there was evidence from which the trial court, as trier of the fact, could reasonably infer that defendant Ferguson sold the pipes, knowing that they would be used for smoking controlled substances, and that defendant Miller possessed the pipes with the intent to sell them to persons who intended to use them to smoke controlled substances. Accordingly, the fourth assignment of error is not well-taken.

By the fifth assignment of error, defendants contend that the trial court erred in referring to defendants' conduct in removing certain items from sale

as evidence of their knowledge of the intended use of other items sold, including those in question. We find no error. The trial court correctly noted that this testimony indicated that defendant Miller was knowledgeable as to the nature of drug paraphernalia and admitted to having previously sold certain items, which he removed from his shelves before the ordinance became effective. The trial court merely alluded to this as being evidence of knowledge, which it is. The fifth assignment of error is not well-taken.

By the sixth assignment of error, defendant Miller contends that the charge against him should be dismissed because he is charged only with a mental state, not an act. We have some difficulty with understanding the import of this contention. Defendant Miller is charged with an offense consisting of the act of possessing drug paraphernalia. Necessarily, in most instances, some type of intent or scienter is necessary. This ordinance does not make it absolutely unlawful to commit the act of possessing drug paraphernalia but, instead, makes such possession unlawful only when coupled with the intent to sell the drug paraphernalia for illegal use. While it may well have been proper for Whitehall to have enacted an ordinance prohibiting the knowing possession of drug paraphernalia by any commercial establishment, it did not choose to do so but prohibited the possession only if that possession was coupled with the requisite intent as to its use.

Defendants rely upon a decision of a Colorado trial court diametrically opposed to the decision of the Supreme Court in *Hoffman* with respect to the meanings of the words designed and intended. As noted previously, the United States Supreme Court had no difficulty with requiring a business person selling objects to understand the design of the object they sell. There is no indication of absolute liability, regardless of scienter; rather, the ordinance requires that it be proved that the seller knew that the objects sold or possessed for sale are drug paraphernalia as defined in the ordinance. In short, the ordinance does not penalize a purely mental state, but there must also be an overt act, in this case, possession of drug paraphernalia. The sixth assignment of error is not well-taken.

For the foregoing reasons, all six assignments of error are overruled, and the judgment of the Franklin County Municipal Court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and REILLY, JJ., concur.