732 So.2d 40 (1999)
Jamal Mahmoud SUBUH, Appellant,
v.
STATE of Florida, Appellee.
No. 98-01167.
District Court of Appeal of Florida, Second District.
May 5, 1999.
*41 Frank Louderback, St. Petersburg, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Ann Pfeiffer Howe, Assistant Attorney General, Tampa, for Appellee.
SALCINES, Judge.
Jamal Mahmoud Subuh timely appeals the judgment and sentence rendered following a jury's verdict of guilt on a drug paraphernalia charge. Subuh contends that the State failed to prove an essential element of the offense for which he was convicted and, consequently, the trial court should have granted a motion for judgment of acquittal. We agree and reverse.
Subuh was charged with the delivery of drug paraphernalia, or the manufacture or possession of drug paraphernalia with the intent to deliver in violation of chapter 893.147(2)(b), Florida Statutes (1997). On March 10, 1998, a jury trial commenced. Detective Joanne Lindsey testified that she had conducted an undercover investigation of the South Georgia Meat Market in St. Petersburg, Florida, on May 9, 1997, as a result of information received about prior sales of glass pipes from the store. The detective stated that it was common for people who smoked crack cocaine to use glass pipes.
Detective Lindsey explained about the methods by which crack cocaine was sold and used, stating that small pieces of crack cocaine which resembled rocks were sold on the street. Usually the drug user would put the crack cocaine into a glass pipe or a soft drink can. When a glass pipe was used, a small piece of Brillo (a steel wool product) would be placed in the *42 glass pipe to prevent the rock of cocaine from being sucked into the mouth. The rock of cocaine was then lit and, as it burned, the smoke would be inhaled producing an instant high. The detective stated that pipes could be made from metal, wood, acrylic, stone, plastic, or ceramic as well as glass.
Detective Lindsey testified that she located an undercover special employee to act as an operative, outfitted her with a listening device, and instructed her to go into the store. The operative testified that she went into the store, dressed like a middle-class housewife, and asked a man behind the meat counter, later identified as Subuh, if they had any more glass pipes. Subuh replied, "Up there," pointing to the front counter. The undercover operative responded, "I don't want everyone to know what I'm in here for." Subuh then spoke to a person at the front counter in Arabic. A translator testified that the words uttered on the tape in Arabic were "Aiteha zoujaja," which translated into English as "[g]ive her the glass."
The operative proceeded to the front counter. The employee at the counter took a small brown paper bag from the top of the counter, reached under the counter with his other hand, and placed a glass pipe in the bag. The operative noted that other items such as cigarettes, lighters, pipe tobacco, and lottery tickets were also behind the counter in the area in which the glass pipe was located. As the operative-buyer was paying for the pipe, she stated to the person behind the counter, "[y]our pipes are cheaper than the ones everywhere else." The person behind the counter shrugged his shoulders and the buyer walked out. The operative returned to Detective Lindsey with the brown bag which contained the glass pipe and, subsequently, they were admitted as trial exhibits.
At trial the operative identified a photo of Subuh as "the man that I asked for the crack pipeor the glass pipe." The defense moved for a mistrial, which was denied. The trial court, nonetheless, instructed the jury to disregard the reference to the "crack" pipe.
Subuh testified that he was a part-time employee of the store and did not recall the specific transaction, but after hearing the pertinent tape recording, stated that he had not known what the buyer meant when she asked "[d]o you have glass pipes?" He stated that he told her where "she can find glass" and directed her to the person behind the cash register, Sahib Etayyeem. Subuh, an immigrant from Jordan who had been in the United States less than four years, said he always talked to Mr. Etayyeem in their native language, Arabic. Subuh testified that there was nothing during the transaction in question which indicated, to him, any involvement with drugs or drug paraphernalia.
At the close of the State's case, Subuh had moved for a judgment of acquittal, which was denied. He renewed his motion at the close of all the evidence and it was again denied. The jury returned a guilty verdict. On that same date, the trial court entered a judgment against Subuh, sentenced him to two years' probation, and imposed court costs.
In order to obtain a conviction against Subuh, the State was required to prove three elements beyond a reasonable doubt. It had to prove that (1) Subuh delivered, possessed with intent to deliver, or manufactured with intent to deliver, drug paraphernalia;[1] and (2) Subuh had knowledge of the presence of the drug paraphernalia; and (3) Subuh knew or reasonably should have known that the drug paraphernalia would be used to ingest, inhale or otherwise introduce crack cocaine into the human body. See Fla. Std. Jury Instr. (Crim.) 323.
*43 The statute, which specifically defines drug paraphernalia, lists glass pipes, with or without screens, as drug paraphernalia. See § 893.145(12)(a), Fla. Stat. (1997). The delivery of a glass pipe, or the manufacture or possession with the intent to deliver such an item, however, is not per se illegal. Rather, the State is required to demonstrate that the defendant knew or reasonably should have known that the paraphernalia was to be used for an illicit purpose. Interpreting section 893.147, Florida Statutes (1984), which is essentially the same as the version of the subject statute, the Fifth District opined:
The statute does not require that a person unequivocally know that the paraphernalia will be used for an illicit purpose; rather, the state must only show that the defendant knew or reasonably should have known that the drug paraphernalia would be used for such purposes. It is important to note that the intent at issue in the statute is that of the seller/defendant, not that of the buyer. See also Fla. Std. Jury Instr. (Crim.) at 242.
Baldwin v. State, 498 So.2d 1385, 1386 (Fla. 5th DCA 1986). A non-exclusive list of considerations for a court or jury to evaluate in determining whether an object is drug paraphernalia is set forth in section 893.146, Florida Statutes (1997).[2] The evidence adduced in regard to whether Subuh knew or reasonably should have known that the glass pipe was paraphernalia was lacking.
The State argued that an inference that Subuh knew or reasonably should have known that the glass pipe would be used for an illicit purpose could be drawn from the operative's statement that she did not want everyone in the store to know what she was purchasing and Subuh's request to another employee behind the counter in Arabic to "give her the glass." The State's contention hinged on the fact that Subuh spoke in Arabic rather than English. There was no testimony, however, that Mr. Etayyeem, to whom the direction was uttered, spoke anything other than Arabic, or that the parties to the conversation usually conversed in English yet spoke in Arabic in this isolated instance. Indeed, when the undercover operative spoke in English to Mr. Etayyeem, all he did was shrug his shoulders. The use of the foreign language was neither shown to be an effort to conceal the transaction in this case nor did it suggest some other sinister motive.
Detective Lindsey's testimony that glass pipes were commonly used to ingest crack *44 cocaine, likewise, did not support an inference that Subuh knew or reasonably should have known that this object would be used in such a manner. The most that such testimony established was that such an object might, could be, or commonly was used for such a purpose. There was no testimony that the glass pipe in question had some peculiar design from which it could be recognized as having a use only to ingest illegal substances. Cf. Dubose v. State, 560 So.2d 323 (Fla. 1st DCA 1990).[3] In fact, the "pipe" was a simple glass tube, four inches long and three-eighths inches in diameter with openings on both ends. It was very similar to the "glass tube" or "pipette" commonly found in any chemistry laboratory or glass "straw" formerly used in hospitals for patients to drink liquids, except this one was shorter. It was not shaped in some special fashion that might have denominated it as a pipe for smoking. Although we are hard pressed to think of a probable lawful use for this tube when purchased from this location, there are many lawful uses for glass tubing.
Mr. Subuh was employed as a part-time butcher at this store. He was not the owner. There was no evidence that he played any role in stocking the shelves of this store. A customer asked him where a product could be located and he provided accurate information on one occasion. The State presented no evidence that Mr. Subuh had worked in the store even one day before this incident or that he had any reason to know about the character of the neighborhood. The State presented evidence of only one sale of one glass pipe. There may be a case in which the sale of a simple glass tube is evidence that helps to establish the offense of delivery of paraphernalia, but the State failed to prove its case against Mr. Subuh.
The trial court's denial of the motion for judgment of acquittal was erroneous. This case is reversed and remanded, and the trial court is directed to immediately discharge Subuh.
Reversed and remanded with directions.
PATTERSON, A.C.J., and ALTENBERND, J., Concur.
NOTES
[1] At the trial, the State proceeded under the theory that Subuh was a principal to the offense. For the purpose of this appeal, Subuh has not raised any issue pertaining to the application of the principal theory, and we do not address that in light of our holding on the dispositive issue.
[2] Section 893.146, Florida Statutes (1997), provides:

Determination of paraphernalia
In determining whether an object is drug paraphernalia, a court or other authority or jury shall consider, in addition to all other logically relevant factors, the following:
(1) Statements by an owner or by anyone in control of the object concerning its use.
(2) The proximity of the object, in time and space, to a direct violation of this act.
(3) The proximity of the object to controlled substances.
(4) The existence of any residue of controlled substances on the object.
(5) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons who he knows, or should reasonably know, intend to use the object to facilitate a violation of this act. The innocence of an owner, or of anyone in control of the object, as to a direct violation of this act shall not prevent a finding that the object is intended for use, or designed for use, as drug paraphernalia.
(6) Instructions, oral or written, provided with the object concerning its use.
(7) Descriptive materials accompanying the object which explain or depict its use.
(8) Any advertising concerning its use.
(9) The manner in which the object is displayed for sale.
(10) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor of or dealer in tobacco products.
(11) Direct or circumstantial evidence of the ratio of sales of the object or objects to the total sales of the business enterprise.
(12) The existence and scope of legitimate uses for the object in the community.
(13) Expert testimony concerning its use.
[3] The First District, in Dubose v. State, 560 So.2d 323 (Fla. 1st DCA 1990), analyzed whether cigarette rolling papers constituted illegal drug paraphernalia as defined in section 893.145, Florida Statutes (1987), where the defendant was convicted of possession of drug paraphernalia. The First District determined that the State did not dispel the defendant's reasonable hypothesis of innocence that he intended to sell the cigarette rolling papers rather than use the papers himself. In so doing, the First District applied a standard requiring the State to prove that, in the absence of evidence disclosing that the defendant actually used or intended to use the papers for an illicit purpose, the State had to show that the "only" intended use of the papers involved the illicit use. We note that such an interpretation might be inapplicable in some circumstances. For example, reviewing the constitutionality of an Illinois village ordinance which prohibited the sale of paraphernalia "designed or marketed" for use with illegal drugs, the Supreme Court held that the village ordinance could constitutionally encompass an object "principally" used with illegal drugs. See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). See also City of Whitehall v. Ferguson, 14 Ohio App.3d 434, 471 N.E.2d 838 (Ohio App. 10 Dist.1984).