David BURROWS, etc., et al., Plaintiffs,

v.

OHIO HIGH SCHOOL ATHLETIC ASSOCIATION, Defendant.

No. C-3-88-51.

United States District Court, S.D. Ohio, W.D.

July 1, 1988.

William L. Havemann, Richard J. Holzer, Andrew C. Storar, Dayton, Ohio, for plaintiffs.

Roger W. Healey, Cincinnati, Ohio, William S. Heichel, Canton, Ohio, for defendant.

OPINION; FINDINGS OF FACT AND CONCLUSIONS OF LAW; JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANT OHIO HIGH SCHOOL ATHLETIC ASSOCIATION AND AGAINST THE PLAINTIFFS HEREIN; TERMINATION ENTRY

RICE, District Judge.

The captioned cause came on to be heard upon its merits, by the Court sitting as the trier of fact, upon the evidence, the exhibits, the arguments and the pretrial and post-trial submissions of counsel.[1]

Upon due consideration of the evidence adduced at trial and the law applicable thereto, it is the opinion of the Court that the Plaintiffs have not sustained their burden of proof by the requisite preponderance of the evidence on their first claim for relief alleging that Defendant's enforcement of the Amendment to Ohio High School Athletic Association (OHSAA) By-

---

**1.** On March 9, 1988, this Court filed a brief Opinion finding for the Defendant on *all* of Plaintiffs' claims set forth in the Plaintiffs' Complaint (Doc. #21). It is the purpose of this expanded Opinion to set forth, in detail, the reasoning behind said Opinion.

law 10–2–6 will violate Plaintiffs' right to associate as guaranteed by the first and fourteenth amendments to the United States Constitution and that the Amendment to OHSAA Bylaw 10–2–6 is overly broad and vague; on their second claim for relief alleging that Defendant's enforcement of the Amendment will deny to Plaintiffs their right to equal protection and due process of law as guaranteed by the fourteenth amendment to the United States Constitution by artificially excluding them from the class of students who may play Spring soccer without loss of eligibility because of Plaintiffs' membership on their respective high school team prior to the adoption of the Amendment; on their third claim for relief alleging that Defendant's enforcement of the Amendment will deny to Plaintiffs their right to equal protection under the laws as guaranteed by the fourteenth amendment to the United States Constitution in that similarly situated students who participate in interscholastic and independent golf, swimming, tennis, track and field and cross country are excluded from the operation of the Amendment; on their fourth claim for relief alleging that Defendant's retroactive enforcement of the Amendment under color of state law will deny to Plaintiffs the right and/or privilege to play Spring soccer without loss of eligibility, a right which had occurred prior to adoption of the Amendment, in violation of Ohio Rev.Code § 1.58; on their fifth claim for relief alleging that Defendant's enforcement of the Amendment and possible recognition of exceptions to the eligibility rule for only those students who have received an invitation from the United States Soccer Association will arbitrarily and capriciously deny Plaintiffs their right to participate in the Olympic Development Program in conflict with the will of Congress as expressed in 36 U.S.C. § 371, *et seq.;* and on their sixth claim for relief alleging that Defendant's enforcement of the Amendment and possible recognition of exceptions to the eligibility rule for only those students who have received an invitation from the United States Soccer Association violates the Supremacy Clause of the

United States Constitution, Article VI, Clause 2.

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, this Court sets forth its Findings of Fact separately from its Conclusions of Law:

## I. FINDINGS OF FACT

### A. UNCONTROVERTED FACTS

The following facts have been stipulated to by and between the parties as uncontroverted (Final Pretrial Order, Doc. # 11):

1. Defendant Ohio High School Athletic Association (OHSAA) is a voluntary, unincorporated not-for-profit association composed of public, parochial and private high schools in the State of Ohio. A school becomes a member of the OHSAA by requesting and completing a participation card with the approval of its Board of Education. Each school must renew its membership annually by completing the membership card with the approval of its Board of Education.

2. The stated objective of the OHSAA is to promote pure, wholesome, amateur athletics in the schools of the State of Ohio. OHSAA is empowered to regulate, supervise and administer interscholastic athletic competition among its member schools. This objective is to be accomplished by determining the qualifications of individual contestants, coaches and officials, by establishing standards for sportsmanship in competition, by furnishing protection against exploitation of school or student, and in any other manner directed by the member schools.

3. In accordance with these objectives, the OHSAA has issued rules and regulations to carry out such purposes. By its membership in the OHSAA, a school voluntarily agrees to abide by the constitution and the rules of the OHSAA. Among the rules adopted by the OHSAA are rules respecting the eligibility of students to compete in interscholastic events. The OHSAA also sets a calendar season for the various interscholastic sports which have been recognized by the OHSAA. For example, the OHSAA has determined that the

interscholastic soccer season shall be in the fall. The interscholastic soccer season in the 1987–88 school year was August 6, 1987 through November 14, 1987.

4. The OHSAA sponsors state tournaments in many of the sports, including a state soccer tournament.

5. The underlying regulations were duly adopted by the member schools of the OHSAA in October, 1978 in accordance with its Constitution and bylaws. Similar regulations govern the interscholastic team sports of football, basketball, baseball, ice hockey, volleyball, field hockey and fast pitch softball.

6. The amendment to bylaw 10–2–6 was duly proposed by the Board of Control of the OHSAA at its May 14, 1987 meeting.

7. The amendment to bylaw 10–2–6 was duly adopted in October, 1987, by a majority referendum vote of 609 member schools, representing 84.6% of the schools which voted on such amendment.

8. Pursuant to the amendment to bylaw 10–2–6 the Commissioner of OHSAA may grant an exception to the eligibility requirements of the underlying soccer regulations to a student to train, try out or compete in an Olympic Development Program if the student receives an invitation from the U.S. Olympic Committee or the national governing body for such sport.

9. The eligibility restrictions concerning play on independent teams for the team sports of soccer, field hockey, volleyball, basketball, ice hockey, baseball and football are triggered only after a student has been a member of an interscholastic team and desire [sic] to be a member of such interscholastic team in the ensuing season.

10. Students who did not participate in interscholastic soccer in the fall of 1987 may participate in independent soccer in the spring of 1988 without loss of eligibility for interscholastic soccer in the fall of 1988.

11. The amendments constitute state action.

12. Northmont High School, Centerville and Alter High Schools are members of the association.

## B. FINDINGS OF FACT

In addition to the foregoing Uncontroverted Facts, the following facts have been established by the preponderance of the evidence.

1. Plaintiffs Burrows, Hetman, and Mahoney represent the class of high school age students who have actively participated in high school interscholastic soccer and amateur soccer competition which is not affiliated with their respective high schools.

2. Plaintiffs Burrows, Hetman, and Mahoney (hereinafter Student Plaintiffs) attend high schools in Montgomery County, Ohio. The high schools attended by the Student Plaintiffs are members of the Defendant OHSAA.

3. Each of the Student Plaintiffs participated in interscholastic soccer for his respective school in the Fall, 1987 soccer season.

4. OHSAA Sports Regulation 9.A.3 states "[a] member of the soccer squad may not participate in independent soccer during the school year following participation as a member of the school squad."

5. Prior to November 1, 1987, OHSAA bylaw 10–2–6 operated as an exception to the OHSAA Soccer Regulations. It provided that squad members would be permitted, without loss of eligibility, to participate through training or competition, in an Olympic Development Program of a sport if the program either was: conducted or sponsored by the United States Olympic Committee, directly funded and conducted by a United States national governing body on a national level, or was authorized by a United States national governing body for athletes having potential for future national team participation.

6. Plaintiff Ohio South Youth Soccer Association is a not-for-profit organization, chartered under the laws of the State of Ohio, to organize and administer the international sport of soccer in southern Ohio as a member of the United States Youth Soccer Association which is the youth division of the United States Soccer Federation, the

national governing body of amateur soccer recognized by the United States Olympic Committee. Plaintiff Ohio Youth Soccer Association North is a not-for-profit corporation, chartered under the laws of the State of Ohio, to organize and administer the international sport of soccer in northern Ohio as a member of the United States Youth Soccer Association.

7. The United States Youth Soccer Association as a division of the United States Soccer Federation, sanctions, through its affiliates, Ohio South Youth Soccer Association and Ohio Youth Soccer Association North, a number of soccer leagues to promote amateur soccer competition for youth nineteen years of age and younger, among which is the league administered in the greater Montgomery County, Ohio area by Plaintiff Miami Valley Youth Soccer Association.

8. The programs of the Plaintiff organizations are recognized by the United States Soccer Federation as Olympic Development Programs. The sports season of the Plaintiff organizations is generally in the Spring.

9. In 1985, OHSAA recognized programs of the Plaintiff organizations as Olympic Development Programs approved under the OHSAA Bylaw 10–2–6.

10. As a result, the Student Plaintiffs engaged in the Spring amateur soccer programs of the Plaintiff organizations without fear of loss of eligibility for the ensuing interscholastic season. Thus, prior to the amendment of OHSAA Bylaw 10–2–6, Student Plaintiffs could have participated in independent soccer in the Spring of 1988 without loss of eligibility for participation in interscholastic soccer in the Fall of 1988.

11. The Plaintiff organizations interpreted OHSAA Bylaw 10–2–6 as providing an exception from the underlying soccer eligibility requirements for *all* interscholastic student soccer players participating in their independent soccer programs.

12. This interpretation by the Plaintiff organizations of OHSAA Bylaw 10–2–6 was considered by the member high schools of the OHSAA to constitute an undesirable circumvention of the underlying Soccer Regulation eligibility requirements.

13. On October 19, 1987 (during the interscholastic soccer season), OHSAA, through its membership, adopted an amendment to Bylaw 10–2–6. The Amendment (effective November 1, 1987) now provides that the *commissioner* of OHSAA *may* grant an exemption from the Soccer Regulations to a student in high school to participate through training, try out or competition in an Olympic Development Program provided the student receives an individual invitation from the United States Olympic Committee or the United States national governing body for that sport.

14. Among the stated rationale for the 1987 amendment is that it would:

a. Limit the number of students that participate in "true" olympic development programs; and,

b. Permit the student with outstanding ability to participate.

15. The adoption of the Amendment to OHSAA Bylaw 10–2–6, complied in all ways with the Constitution and Bylaws of the OHSAA.

16. Loss of eligibility under the amendment is not absolute. The commissioner *may* grant an exception to a student who receives an individual invitation from the United States Olympic Committee or national governing body. However, there are no guidelines controlling the commissioner's discretion.

17. The amendment and eligibility requirements apply only to "squad members." The status of the Plaintiff class as squad members was fixed prior to the amendment and, at least as concerns independent soccer for the Spring of 1988, only those who were squad members prior to the amendment will suffer risk of loss of eligibility for Fall, 1988 interscholastic soccer if they participate in the previously approved Spring programs of the Plaintiff organizations.

18. Both the soccer programs of the Defendant OHSAA and those of the Plaintiff organizations are beneficial to the Stu-

dent Plaintiffs. Those sanctioned by Defendant OHSAA provide skill development, peer recognition at school, healthy rivalry among various schools, and advancement to state tournaments. The programs of the Plaintiff organizations offer the opportunity of further skill development, playing with and against students from schools other than those of their interscholastic program, comaraderie and sportsmanship. If a student develops well in the independent programs, he is afforded the opportunity to advance through district, state, regional and perhaps national team competition.

19. Students who participate in interscholastic and independent golf, swimming, track and field and cross country are not subject to Defendant's sports season regulations.

## II. DISCUSSION

As noted above, Plaintiffs' Complaint in this case states six causes of action:

1. Count I alleges that Defendant's enforcement of the Amendment to Ohio High School Athletic Association (OHSAA) Bylaw 10–2–6 will violate Plaintiffs' right to associate as guaranteed by the first and fourteenth amendments to the United States Constitution and that the Amendment to OHSAA Bylaw 10–2–6 is overly broad and vague;

2. Count II alleges that Defendant's enforcement of the Amendment will deny to Plaintiffs their right to equal protection and due process of law as guaranteed by the fourteenth amendment to the United States Constitution by artificially excluding them from the class of students who may play Spring soccer without loss of eligibility because of Plaintiffs' membership on their respective high school team prior to the adoption of the Amendment;

3. Count III alleges that Defendant's enforcement of the Amendment will deny to Plaintiffs their right to equal protection under the laws as guaranteed by the fourteenth amendment to the United States Constitution in that similarly situated students who participate in interscholastic and independent golf, swimming, tennis, track and field and cross country are excluded from the operation of the Amendment;

4. Count IV alleges that Defendant's retroactive enforcement of the Amendment under color of state law will deny to Plaintiffs the right and/or privilege to play Spring soccer without loss of eligibility, a right which had accrued prior to adoption of the Amendment, in violation of Ohio Rev.Code § 1.58;

5. Count V alleges that Defendant's enforcement of the Amendment and possible recognition of exceptions to the eligibility rule for only those students who have received an invitation from the United States Soccer Association will arbitrarily and capriciously deny Plaintiffs their right to participate in the Olympic Development Program in conflict with the will of Congress as expressed in 36 U.S.C. § 371;

6. Count VI alleges that Defendant's enforcement of the Amendment and possible recognition of exceptions to the eligibility rule for only those students who have received an invitation from the United States Soccer Association violates the Supremacy Clause of the United States Constitution, Article VI, Clause 2.

### A. FREEDOM OF ASSOCIATION

In Count I, Plaintiffs assert that Defendant's enforcement of the Amendment to Bylaw 10–2–6 will violate Plaintiffs' right to associate. The United States Supreme Court has recognized that two separate and distinct types of association are constitutionally protected. *Roberts v. United States Jaycees*, 468 U.S. 609, 617, 104 S.Ct. 3244, 3249, 82 L.Ed.2d 462 (1984).

First, the Court has held that the Constitution protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships. Second, the Court has upheld the freedom of individuals to associate for the purpose of engaging in protected speech or religious activities. *Board of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 107 S.Ct. 1940, 1945, 95 L.Ed.2d 474 (1987). The former type of association is known as

"private" association, while the latter is known as "expressive" association. *Id.*

"[F]reedom of [private] association receives protection as a fundamental element of personal liberty." *Roberts,* 468 U.S. at 618, 104 S.Ct. at 3249. "In determining whether a particular association is sufficiently personal or private to warrant constitutional protection, we [must] consider factors such as size, purpose, selectivity, and whether others are excluded from critical aspects of the relationship." *Board of Directors of Rotary Int'l,* 107 S.Ct. at 1946. At this point in time, very few relationships have been granted the status of a private association, to wit: "marriage, the begetting and bearing of children, child rearing and education, and cohabitation with relatives." *Id.* at 1945–46 (citations omitted). Family relationships owe their status as private associations to the fact that they involve "deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences and beliefs but also distinctively personal aspects of one's life." *Roberts,* 468 U.S. at 620, 104 S.Ct. at 3250. The vast majority of relationships simply do not reach the level of intimacy required of a private association.

■ The Court concludes that the Student Plaintiffs' association with others for the purpose of participating in independent spring soccer and out of season instruction is *not* a private association. The relationship enjoyed by members of an athletic team can hardly be compared to the relationship shared by members of a family. A soccer team is relatively large in size, requiring at least eleven players. The degree of selectivity in decisions to begin and maintain the relationship is low. Individual players appear to have little, if any, role in determining who becomes a teammate. In fact, 36 U.S.C. § 391(b)(5) requires that the United States Soccer Foundation demonstrate "that its membership is open to *any* individual who is an amateur athlete...." (Emphasis added). The critical aspects of this type of relationship are held up for public view. The individual players are associated to engage in a sport. This necessarily requires the presence of another team as well as officials, fans, etc. The relationship enjoyed by team members is not the type of intimate relationship protected by the freedom of private association.

The right of expressive association relates to one's "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties." *Roberts,* 468 U.S. at 618, 104 S.Ct. at 3249. In order to determine whether a particular association can be categorized as an expressive association, the purpose of the association and the activities in which its members engage must be considered.

The Court concludes that the Student Plaintiffs' association with others for the purpose of participating in independent Spring soccer and out of season instruction is *not* an expressive association. This particular type of association is not entered into "for the purpose of engaging in protected speech or religious activities." *Board of Directors of Rotary Int'l,* 107 S.Ct. at 1945. The stated purpose of the United States Youth Soccer Association is "to establish the best national youth team in the United States; to assure that each level within the program provides each participant a meaningful experience in his/her soccer development; [and] to provide continuity at all levels of administration and coaching to achieve the ultimate goal—a national youth soccer team." Members of youth soccer teams have not associated for expressive purposes, but to improve athletic skills. They are playing a game, not promoting an ideal. As this type of association is not related to "[a]n individual's freedom to speak, to worship, ... or to petition the government for the redress of grievances....", this is not the type of expressive association protected by the first amendment.

Based upon the foregoing, the Court concludes that Plaintiffs do not have a fundamental right to associate with others to participate in independent Spring soccer and out of season instruction. As no fundamental right is involved, if the Court concludes that the Amendment to OHSAA Bylaw 10–2–6 is rationally related to a permissible state interest, the Amendment must be upheld. *See Parham v. Hughes,* 441 U.S. 347, 357, 99 S.Ct. 1742, 1748, 60 L.Ed.2d 269 (1979).

 Sixth Circuit has already concluded that Regulation 9.A.3, the regulation underlying OHSAA Bylaw 10–2–6, has a rational basis. *Anderson v. Ohio High School Athletic Ass'n,* No. 83–3826, slip op. at 2–3 (6th Cir. Dec. 7, 1984) [754 F.2d 372 (Table)]. This rule is intended to encourage students to participate in different sports, rather than limiting themselves to one particular sport. *Id.* at 3. In addition, it is intended to promote competition and fairness in interscholastic competition. *Anderson v. Ohio High School Athletic Ass'n,* No. C–79–50, slip op. at 9 (N.D.Ohio Sep. 21, 1983). Regulation 9.A.3 prohibits any squad member from participating in both Spring independent soccer and Fall interscholastic soccer. The enactment of OHSAA Bylaw 10–2–6 was intended to provide an exception for those athletes of Olympic caliber. However, the exception soon swallowed the rule. Everyone participating in Spring independent soccer fell within the exception.

The Amendment to OHSAA Bylaw 10–2–6 is intended to prevent students from circumventing Regulation 9.A.3. Like Regulation 9.A.3, OHSAA Bylaw 10–2–6 is intended to encourage students to expand their athletic horizons. It is also intended to promote competition and fairness by preventing teams from playing together (and thus developing team skills) over a twelve month period. Based upon the foregoing, this Court concludes that as the State has a legitimate interest in promoting fairness and competition in interscholastic athletics and as the Amendment to OHSAA Bylaw 10–2–6 is rationally related to achieving this interest, the Amendment is valid and enforceable. Accordingly, the Court concludes that Defendant has not infringed upon Plaintiffs' constitutional rights of association, and that judgment must be entered for the Defendant on Count I of Plaintiffs' Complaint as it pertains to freedom of association.

### B. OVERBREADTH AND VAGUENESS

Count 1 of Plaintiff's Complaint also alleges that the Amendment to OHSAA Bylaw 10–2–6 is overly broad and vague and leaves arbitrary enforcement to the unfettered discretion of the OHSAA Commissioner.

██ A claim of overbreadth cannot succeed unless "the enactment reaches a substantial amount of constitutionally protected conduct." *Village of Hoffman v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). As there is no constitutionally protected right to participate in interscholastic athletics, *Hamilton v. Tennessee Secondary School Athletic Ass'n,* 552 F.2d 681, 682 (6th Cir.1976) and there is no constitutionally protected right to participate in independent soccer, *see supra,* the Court concludes that Plaintiffs' overbreadth challenge is without merit.

██ "The void-for-vagueness doctrine reflects the principle that 'a statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process law.'" *Roberts v. United States Jaycees,* 468 U.S. 609, 629, 104 S.Ct. 3244, 3255, 82 L.Ed.2d 462 (1984) (*quoting Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)). The Amendment to OHSAA Bylaw 10–2–6, taken in conjunction with Regulation 9.A.3, does prohibit those squad members wishing to maintain their interscholastic eligibility from participating in independent soccer without the approval of the OHSAA Commissioner. However, the Court concludes that the terms of the Amendment are quite clear, to wit: *no*

squad member can participate in independent soccer and maintain his eligibility for interscholastic soccer without obtaining the Commissioner's approval.

As the terms of OHSAA Bylaw 10–2–6 provide the Commissioner with the discretion to approve or disapprove individual invitations, the Court does recognize that there is some danger of arbitrary enforcement. However, at this point in time, the Court finds such danger to be speculative. There is no evidence that the Bylaw has been enforced in an arbitrary manner. Further, the Court cannot "assume that the ... [OHSAA] will take no further steps to minimize the dangers of arbitrary enforcement." *Village of Hoffman Estates*, 455 U.S. at 504, 102 S.Ct. at 1196. Finally, the Court notes that this is not a situation in which a law "threatens to inhibit the exercise of constitutionally protected rights." *Id.* at 499, 102 S.Ct. at 1193. The same degree of precision is not required of an athletic bylaw that would be required of a criminal statute.

Based upon the foregoing, the Court concludes that the Amendment to OHSAA Bylaw 10–2–6 is neither overly broad nor vague and that judgment must be entered for the Defendant on Count I of Plaintiffs' Complaint as it pertains to overbreadth and vagueness.

## C. EQUAL PROTECTION AND THE AMENDMENT TO BYLAW 10–2–6

■ In Count II of their Complaint, Plaintiffs assert that Defendant's enforcement of the Amendment to OHSAA Bylaw 10–2–6 will deny to Plaintiffs their right to equal protection and due process of law by artificially excluding them from the class of students who may play Spring soccer without loss of eligibility because of Plaintiffs' membership on their respective high school teams prior to the adoption of the Amendment. The Plaintiffs do *not* argue that they are members of a suspect class. Thus, the seminal issue with regard to Count II is whether the classification created by the Amendment is rationally related to a permissible/legitimate state interest.

As previously noted, the State does have a legitimate interest in promoting fairness and competition in high school athletic activities and in encouraging athletes to become well-rounded. The Amendment to OHSAA Bylaw 10–2–6 was in large part intended to prevent students from concentrating their efforts upon soccer twelve months out of the year. OHSAA members perceive such devotion to a single team sport to be detrimental to the individual player *and* to interscholastic soccer.

The Amendment does force the Student Plaintiffs to chose between Spring independent soccer and Fall interscholastic soccer, but that is exactly what the Amendment was intended to do. Without the Amendment squad members would have been able to participate in year-round soccer, to wit: Fall, 1987; Winter, 1988; Spring, 1988; and Summer, 1988, and then be eligible for the Fall 1988 interscholastic squad. Twelve months of competition by a core of squad members could result in a powerhouse squad *vis a vis* teams from other high schools which would impair competition overall. Because they did not play soccer in the Fall of 1987, students who were *not* squad members in the Fall of 1987 are not in danger of devoting a twelve month period to soccer. At most, non-squad members could participate in soccer for the nine months prior to the 1988 interscholastic season, to wit: Winter, 1988; Spring, 1988; and Summer, 1988.

The Court notes that Student Plaintiffs are not without options. They can choose to participate in Spring independent soccer or they can choose to participate in Fall interscholastic soccer. Changing the effective date of the Amendment would merely have postponed the choice which student athletes must now make.

Based upon the foregoing, the Court concludes that the classification created by the Amendment is rationally related to the State's legitimate interest in preventing year-round competition in a single sport. Accordingly, the Court concludes that Defendant has not infringed upon Plaintiffs' constitutional rights of equal protection and due process of law, and that judgment

must be entered for the Defendant on Count II of the Plaintiffs' Complaint.

In Count III of their Complaint, Plaintiffs assert that Defendant's enforcement of the Amendment to OHSAA Bylaw 10–2–6 will deny to Plaintiffs their right to equal protection in that similarly situated students who participate in interscholastic and independent golf, swimming, tennis, track and field and cross country are excluded from the operation of the Amendment. Once again, Plaintiffs concede that no suspect class is involved. Thus, the seminal issue with regard to Count III is whether the classification created by the Amendment is rationally related to a permissible/legitimate state interest.

As previously noted, Defendant does have a legitimate interest in promoting fairness in competition in interscholastic athletics. Richard L. Armstrong, Commissioner of Defendant OHSAA, testified that OHSAA members' concern over fairness in competition was behind the amendment to OHSAA Bylaw 10–2–6. According to Commissioner Armstrong, team sports are distinguished from individual sports because the OHSAA fears that if squad members are given the opportunity to polish team skills year-round, competition will be damaged. It would be unfair to allow members of certain teams to compete together *as a team* year-round, while members of other teams are denied that opportunity as a result of a lack of independent teams in their vicinity. While team events do take place in golf, swimming, tennis, track and field and cross country, these sports are primarily geared to individual competition. The fact that team members in these sports compete together on a year-round basis will not have the same impact upon competition that year-round soccer participation would have upon that competition.

In addition, individual sports can be differentiated, as the pressure to participate in a given sport year-round is much greater when a student participates in a team sport. If any one member of a soccer team is lacking in skill, the entire team is weakened. However, a bad showing by a member of a swim team or track and field team will generally not impact upon the successes of other team members. As a result, those involved in *team* sports, such as soccer, are much more likely to pressure individual team members to hone their skills. The OHSAA does not want squad members to be pushed into competing on a year-round basis, when they have no desire to do so.

Based upon the foregoing, the Court concludes that the classification created by the enforcement of the amendment to OHSAA Bylaw 10–2–6 is rationally related to the state's legitimate interest in promoting competition and in protecting student athletes from the potential for undue pressure and abuse. Accordingly, judgment must be entered for the Defendant on Count III of the Plaintiffs' Complaint.

### D. OHIO REV. CODE § 1.58 AND THE AMENDMENT TO BYLAW 10–2–6

In Count IV of their Complaint, Plaintiffs assert that Defendant's retroactive enforcement of the amendment to OHSAA Bylaw 10–2–6 under color of state law will violate Ohio Rev.Code § 1.58, by denying to Plaintiffs the right and/or privilege to play Spring soccer without loss of eligibility, a right which had accrued prior to adoption of the Amendment.

Section 1.58 of the Ohio Revised Code states that "the ... amendment ... of a *statute* does not ... affect any validation, cure, right, [or] privilege ... previously acquired...." (Emphasis added). The Court concludes that the plain language of Ohio Rev.Code § 1.58, bars the Court from granting relief under this statute. OHSAA Bylaw 10–2–6 is *not* a statute. Accordingly, the Court concludes that § 1.58 of the Ohio Revised Code is simply not applicable to the amendment of said Bylaw. Based upon the foregoing, judgment must be entered for the Defendant on Count IV of Plaintiffs' Complaint.

### E. THE AMATEUR SPORTS ACT OF 1978 AND THE AMENDMENT TO OHSAA BYLAW 10–2–6

In Count V of their Complaint, Plaintiffs allege that Defendant's enforce-

ment of the amendment to OHSAA Bylaw 10–2–6 and possible recognition of exceptions to the eligibility rule for only those students who have received an invitation from the United States Soccer Association will arbitrarily and capriciously deny Plaintiffs their right to participate in the Olympic Development Program in conflict with the will of Congress as expressed in 36 U.S.C. § 371.

In Count VI of their Complaint, Plaintiffs allege that Defendant's enforcement of the amendment and possible recognition of the exceptions to the eligibility rule violates the Supremacy Clause of the United States Constitution, article VI, clause 2. The key issue with regard to both Count V and Count VI is whether the amendment to OHSAA Bylaw 10–2–6 "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in the enactment of the Amateur Sports Act of 1978. *Hillsborough County, Florida v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (*quoting Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)).

Section 392(a)(1) of Title 36 of the United States Code requires that a national governing body, such as the United States Soccer Federation, must "develop interest and participation throughout the United States...." In addition, the United States Soccer Federation must demonstrate "that its membership is open to any individual who is an amateur athlete, coach, trainer, manager, or official active in the sport [of soccer] ..." and provide "an equal opportunity to amateur athletes, coaches, trainers, managers, administrators, and officials to participate in amateur athletic competition, without discrimination on the basis of race, color, religion, age, sex, or national origin...." 36 U.S.C. § 391(b)(5), (6). Plaintiffs assert that the amendment to OHSAA Bylaw 10–2–6 interferes with the will of Congress in that it would allegedly require the United States Soccer Federation to issue an individual invitation to any student athlete who expresses a desire to participate in the program sponsored by the United States Soccer Federation.

This Court cannot conclude that the amendment to OHSAA Bylaw 10–2–6 places any additional burden upon the United States Soccer Federation. Student athletes are free to participate in Spring independent soccer. The amendment does not affect the student's eligibility to participate in *independent* soccer. Instead, it is the student's eligibility to participate in *interscholastic* soccer which is affected by the amendment. Congress expressly recognized the right of organizations such as the OHSAA to conduct their own amateur athletic competitions and to exercise exclusive jurisdiction over such competitions. The OHSAA is within its rights in establishing eligibility requirements.

The Court concludes that in enacting the Amateur Sports Act of 1978, 36 U.S.C. § 371, *et seq.,* Congress did intend to provide all amateur athletes with the opportunity to participate in Olympic Development Programs. However, the Court further concludes that no action taken by Defendant OHSAA denies Student Plaintiffs the opportunity to participate in independent sports. Based upon the foregoing, the Court concludes that the amendment of OHSAA Bylaw 10–2–6 does not interfere with the will of Congress as expressed by 36 U.S.C. § 371, *et seq.,* and thus, does not violate the Supremacy Clause of the United States Constitution. Accordingly, judgment must be entered for the Defendant on Count V and Count VI of Plaintiffs' Complaint.

## III. CONCLUSIONS OF LAW

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1343(a)(3). This Court has jurisdiction over Count IV pursuant to the doctrine of pendent jurisdiction. This action arises under the Constitution and laws of the United States, in particular, the first and fourteenth amendments to the Constitution of the United States, 42 U.S.C. § 1983, and 36 U.S.C. § 371, *et seq.* Plaintiffs allege violations of the equal protection clause and due process clause of the fourteenth amendment of the United States Constitution and a violation of the right of freedom of association.

Plaintiffs also allege that the amendment to OHSAA Bylaw 10–2–6 is overly broad and vague, that it violates § 1.58 of the Ohio Revised Code, and that it conflicts with the Amateur Sports Act of 1978, 36 U.S.C. § 371, *et seq.* and, therefore, violates the Supremacy Clause of the United States Constitution.

2. The action of the OHSAA in adopting the amendment to OHSAA Bylaw 10–2–6 constitutes state action.

3. There is no constitutionally protected right to participate in interscholastic athletics. *Hamilton v. Tennessee Secondary School Athletic Ass'n*, 552 F.2d 681, 682 (6th Cir.1976); *Albach v. Odle*, 531 F.2d 983, 984–85 (10th Cir.1976); *Mitchell v. Louisiana High School Athletic Ass'n*, 430 F.2d 1155, 1158 (5th Cir.1970).

4. "The privilege of participating in interscholastic athletics ... [is] outside the protection of due process." *Hamilton*, 552 F.2d at 682 (*quoting Mitchell v. Louisiana High School Ass'n*, 430 F.2d 1155, 1158 (5th Cir.1970)).

5. Plaintiffs do not have a constitutionally protected right to associate with others to participate in independent Spring soccer and out of season instruction. *See Board of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987); *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). The type of association in which the Plaintiffs seek to participate is neither a private association nor an expressive association. *See Board of Directors of Rotary Int'l*, 107 S.Ct. at 1945; *Roberts*, 468 U.S. at 617–18, 104 S.Ct. at 3249–50.

6. There is a rational basis for OHSAA sports regulation 9.A.3. *Anderson v. Ohio High School Athletic Ass'n*, No. 83–3826, slip op. at 2–3 (6th Cir. December 7, 1984) [754 F.2d 372 (Table)]. This rule is intended to encourage students to participate in different sports, rather than limiting themselves to one particular sport. *Id.* at 3. The regulation is also intended to promote competition and fairness in interscholastic soccer competitions. *Anderson v. Ohio*

*High School Athletic Ass'n*, No. C–79–50, slip op. at 9 (N.D.Ohio September 21, 1983).

7. There is a rational basis for the amendment to OHSAA Bylaw 10–2–6. This amendment is intended to prevent student athletes from circumventing the restrictions imposed by OHSAA sports regulation 9.A.3. Like OHSAA sports regulation 9.A.3, the amendment to OHSAA Bylaw 10–2–6 was enacted for the purpose of encouraging students not to limit themselves to one sport and to prevent members of interscholastic soccer teams from playing together (and thus developing team skills) over a twelve month period.

8. The Amendment to OHSAA Bylaw 10–2–6 is *not* overly broad and/or void-for-vagueness. *See Roberts v. United States Jaycees*, 468 U.S. 609, 629, 104 S.Ct. 3244, 3255, 82 L.Ed.2d 462 (1984); *Village of Hoffman v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982).

9. Defendant's enforcement of the amendment to OHSAA Bylaw 10–2–6 will *not* deny to Plaintiffs their right to equal protection and due process of law as guaranteed by the fourteenth amendment to the United States Constitution by artificially excluding them from the class of students who may play Spring soccer without loss of eligibility. The classification created by the amendment is rationally related to the Defendant's legitimate interest in preventing year-round competition in a single sport. In the absence of the amendment, squad members would have had the advantage of developing team skills over a twelve month period prior to the Fall 1988 interscholastic soccer season. Non-squad members, on the other hand, will *not* have the advantage of developing team skills over the entire twelve month period preceding the Fall 1988 interscholastic soccer season.

10. Defendant's enforcement of the amendment to OHSAA Bylaw 10–2–6 will not deny to Plaintiffs their right to equal protection under the laws despite the fact that students who participate in interscholastic and independent golf, swimming, tennis, track and field and cross country are

excluded from the operation of the Amendment. Defendant OHSAA does have a rational basis for distinguishing team sports from individual sports. Students engaging in team sports, such as soccer, are much more likely to be pressured to participate in their sport on a year-round basis, than are students participating in individual sports. Further, if squad members are given the opportunity to polish *team* skills year-round, interscholastic competition will be damaged. Defendant OHSAA has a legitimate interest in protecting fairness and competition in interscholastic athletics and in protecting student athletes from undue pressure.

11. Ohio Rev.Code § 1.58 by its very terms applies only to statutes, and thus, is inapplicable to the amendment to OHSAA Bylaw 10–2–6.

12. The amendment to OHSAA Bylaw 10–2–6 does not conflict with the Amateur Sports Act of 1978 (36 U.S.C. § 371, *et seq.*) and does not, therefore violate the Supremacy Clause of the United States Constitution. The amendment governs eligibility for interscholastic soccer, *not* independent soccer. Section 396 of Title 36 of the United States Code grants the Defendant OHSAA exclusive jurisdiction over the interscholastic competition conducted by OHSAA.

13. Accordingly, judgment is ordered in favor of the Defendant and against all Plaintiffs on Count I, Count II, Count III, Count IV, Count V, and Count VI of Plaintiffs' Complaint.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.