The Honorable Sarah S. Agee State Representative 11898 Sage Road Prairie Grove, AR 72753-9168
Dear Representative Agee:
You have requested an Attorney General opinion concerning three proposed ordinances from Washington County that impose various restrictions on property owners. You have provided copies of the proposed ordinances for my review. They are currently identified by the numbers 6.1, 6.2, and 6.3.
Ordinance No. 6.1 is entitled: "An Ordinance Amending Washington County Code 12-41 et seq. to Revise the Definition of Junk."
Ordinance No. 6.2 is entitled: "An Ordinance Prohibiting the Maintenance of Property in an Unsafe, Unsanitary, or Unsightly manner, and Proscribing Penalties and Remedies For Such."
Ordinance No. 6.3 is entitled: "An Ordinance Prohibiting the Maintenance of Property in a Manner That Presents a Danger to the Safety and Health of the Public."
Concerning these three ordinances, you have asked:
(1) Are these proposed ordinances constitutional?
 (2) Are there state laws that already impose such stringent control on property owners?
 (3) Is there anything in the environmental law or waste management division that would give the county such power?
 (4) Is such power granted under the duties of the county judge or quorum court, or is it within the city's jurisdiction under the 5-mile growth law?
RESPONSE
Question 1 — Are these proposed ordinances constitutional?
As an initial matter, I must point out that the Office of the Attorney General normally concerns itself primarily with matters of state law, and does not ordinarily construe the language of county ordinances. The construction of such ordinances necessarily involves a determination of the intent of the quorum court, a factor that this office is not well situated to consider and address. It also requires a consideration of other factors of which this office is unaware that could reflect a particular intent on the part of the quorum court that is not apparent from the face of the ordinances. The awareness of such factors is a matter within the local domain, rather than the domain of this office. The construction of the ordinances about which you have inquired therefore must ultimately be handled through a medium that can consider such local matters, such as a court. For these reasons, I cannot opine definitively in response to your question.
Nevertheless, because your question inquires about certain non-local legal matters, I will proceed to respond to the extent that I am able, given the limitations on my ability to construe the ordinance.
It is my opinion that the proposed ordinances may give rise to constitutional concerns. In particular, they could raise questions about the constitutional principles of due process and equal protection.
Although I will be discussing certain possible constitutional concerns, I must note that legislation is presumed to be constitutional, and that the party challenging that legislation bears the burden of establishing that it is unconstitutional. Bunch v. State, 344 Ark. ___, ___ S.W.3d ___ (May 10, 2001). Moreover, if legislation is challenged before it is enforced, the challenger may be required to show that the legislation is unconstitutional in all its applications — i.e., that the legislation could never be applied in a constitutional manner. Village of HoffmanEstates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489 (1982); PlannedParenthood of Minnesota v. State of Minnesota, 910 F.2d 479 (8th Cir. 1990); Cambiano v. Neal, 342 Ark. 691, 35 S.W.3d 792 (2000). I also note that as discussed in response to Question 3, counties have substantial statutory authority to regulate in the areas addressed by Ordinances 6.1, 6.2, and 6.3.
Despite this heavy burden on would-be challengers, the county would be well advised to be aware of the basis for possible challenges and to consult its counsel about these possibilities. It should be noted that I do not express an opinion as to the likelihood of success on any of the possible challenges discussed below.
Due Process
Ordinance No. 6.2 raises questions based on the principle of substantive due process, which arises out of the 5th and 14th amendments to the U.S. Constitution. The general idea of the principle of substantive due process is that governmental entities cannot arbitrarily deprive individuals of life, liberty, or property interests.
Legislation is considered to violate the principle of substantive due process if its language is so vague that a person of ordinary intelligence cannot determine what is prohibited by the legislation, and if its standards for enforcement are vague enough to allow for arbitrary and discriminatory enforcement. Grayned v. City of Rockford, 408 U.S. 104
(1972); Cambiano, supra.
A plausible argument could be made that the language of Ordinance 6.2 is unconstitutionally vague. More specifically, it could be argued that the ordinance fails to give adequate information for compliance, and that it fails to provide an adequately clear enforcement mechanism.
Regarding the adequacy of the compliance information provided by the ordinance, it could be argued that because certain key terms in the ordinance are not defined, the ordinance does not provide persons of ordinary intelligence with sufficient information to determine what is prohibited. For example, the ordinance requires that every occupant of any structure "keep in a clean and sanitary condition" the part of the structure in which he lives. The ordinance also requires that every occupant of a structure "keep all plumbing fixtures therein in a clean and sanitary condition" and that they "be responsible for the exercise of reasonable care in the proper use and operation thereof." The ordinance authorizes the county judge to order the abatement of conditions that do not comply with these requirements. The judge may order property razed if the violation is not abated. In addition, persons who are found to be in violation of the judge's order are deemed guilty of a misdemeanor and are punishable by fine. Thus, the ordinance could have a substantial impact upon an individual's property interests. A challenge to this ordinance might focus on the fact that the terms "clean and sanitary condition" and "reasonable care in the proper use and operation" are not defined in the ordinance. It could be argued that because there is such a wide variety of standards for what constitutes "clean and sanitary" and for what constitutes "reasonable care" in the use and operation of plumbing fixtures, the ordinance does not adequately inform the county's citizens as to what would constitute a violation of the ordinance.
As previously noted, the ordinance's enforcement procedures could also be challenged on the grounds that it fails to provide an adequately clear enforcement mechanism. The ordinance provides that an order of abatement can only be issued after an inspection and a determination by the judge or his designee that the property in question is in violation of the ordinance. However, the ordinance does not enumerate standards for the instigation of an inspection. This shortcoming of the ordinance could be challenged on the grounds that it allows for arbitrary and discriminatory inspection — i.e., that county-authorized inspectors can pick and choose which property to inspect and when, and for what conduct. It raises the specter of having government officials going door to door at their whim without warning to determine how recently homeowners have scrubbed their toilets with Comet, or how often they flush. The ordinance provides no safeguards against this type of unreasonable enforcement.
These are some possible challenges that could be levied against Ordinance 6.2, and that if successful, could lead to a determination that the ordinance violates the principle of substantive due process. I reiterate, however, that the ordinance will be presumed to be constitutional, and the challenger will bear the burden of proof.
Equal Protection
Ordinances Nos. 6.1 and 6.3, when read together, raise questions about the principle of equal protection, which arises out of the 14th
amendment to the U.S. Constitution and Article 2, §§ 2 and 3 of the Arkansas Constitution. The equal protection doctrine prohibits certain types of "classifications." A classification is the disparate treatment of those who are similarly situated. However, classifications in and of themselves do not violate the equal protection doctrine. In order to establish an equal protection violation arising out of a classification that does not affect a suspect class or a fundamental right, it is necessary to show that the disparity is arbitrary. That is, the disparity must be shown to have no rational basis — no rational relation to a legitimate end. Vacco v. Quill, 521 U.S. 793 (1997); Romer v. Evans,517 U.S. 620, 631 (1996); Clements v. Fashing, 457 U.S. 957 (1982); Craft v.City of Fort Smith, 335 Ark. 417, 984 S.W.2d 22 (1998).
An argument could be made that Ordinances Nos. 6.1 and 6.3 create an arbitrary classification. Ordinance 6.1 defines the term "junk" to include, among other items, "mobile homes or trailers." The ordinance also states: "In regards to mobile homes or trailers, such will not be considered junk if assessed for ad valorem taxes and said taxes are paid." The significance of an item being classified as "junk" appears in Ordinance No. 6.3, which imposes a penalty for maintaining property in an "unsanitary condition." The term "unsanitary condition" is defined to include "permitting the accumulation of . . . junk[.]" The penalty for violating Ordinance 6.3 is $500.00 for the first offense, $1000.00 for the second offense, and $250.00 per day for violations of a continuing nature.
These two ordinances create two classes of property owners: those who fail to pay ad valorem taxes on mobile homes, and those who fail to pay ad valorem taxes on non-mobile homes. A property owner who fails to pay ad valorem taxes on a mobile home (no matter how well-kept his mobile home) is automatically at risk of being determined to be in violation of Ordinance 6.3, because his mobile home has instantly become "junk," thus triggering a determination of whether his homesite constitutes an "unsanitary condition." A property owner who fails to pay ad valorem taxes on a house (as opposed to a mobile home) does not run the same risk. It is not clear that tying the determination of unsanitary conditions to the payment of ad valorem taxes bears any rational relation to the ordinance's goal of abating such conditions. For this reason, it could be argued that Ordinances 6.1 and 6.3 violate the principle of Equal Protection.
Once again, the challenger will bear the burden of proof. I reiterate that I express no opinion as to the likelihood of success on the possible challenges discussed above. Nevertheless, it is my opinion that these are issues about which the county should consult its counsel.
Question 2 — Are there state laws that already impose such stringentcontrol on property owners?
It is difficult to provide a thorough and adequate response to this question, as it is stated. Certain state laws do address the types of issues and activities that are addressed in Ordinances 6.1, 6.2, and 6.3. Some violations under state law carry both civil and criminal penalties that are more stringent than those imposed by these ordinances. See A.C.A. § 8-6-204. In order to analyze this issue in more detail, it would be necessary for you to identify the particular violation in question under the county ordinance, so that I could determine whether that violation corresponds to any violation under state law. I cannot perform such an analysis in general or in the abstract.
Question 3 — Is there anything in the environmental law or wastemanagement division that would give the county such power?
The counties are authorized by state law to govern the types of activities that are addressed in Ordinances 6.1, 6.2, and 6.3.
The counties' authority in this realm arises out of various statutory sources, including:
 • A.C.A. § 14-14-801(b)(3) (authorizing counties to "secure freedom from dangerous or noxious activities").
 • A.C.A. § 14-14-802(E)(i);(F);(H) (authorizing counties to provide through ordinance for "air and water pollution control services;" "solid waste services, including: recycling services and solid waste collection and disposal services;" and "water, sewer, and other utility services, including: sanitary and storm sewers and sewage treatment services").
 • A.C.A. § 14-17-206 (authorizing county planning board's plan to include provision for water, sewer, solid waste, and drainage improvements).
 • A.C.A. § 14-20-109 (authorizing counties to provide for rural solid waste collection and disposal services).
 • A.C.A. § 8-6-212 (mandating that counties establish solid waste management systems, and authorizing counties to issue orders and enact ordinances governing all phases of these systems.)
These sources of authority give counties a firm basis upon which to enact ordinances governing the maintenance of property in a safe and sanitary condition. The counties' power with regard to these matters is restricted, however, in that they are prohibited from issuing any order or enacting any ordinance that is more restrictive than state laws or regulations, or than federal law. See A.C.A. §§ 8-6-209; -212(e).
Question 4 — Is such power granted under the duties of the county judgeor quorum court, or is it within the city's jurisdiction under the 5-milegrowth law?
As discussed in response to Question 3, counties are authorized by various statutes to enact ordinances that govern the activities that are addressed in Ordinances 6.1, 6.2, and 6.3. (It should be noted that the sources of law cited in that discussion did not include the statute or constitutional provision that outline the county judge's powers. Ark. Const., am. 55, § 3; A.C.A. § 14-14-1102. Such authority, therefore, is vested in the quorum court, rather than in the county judge.)
However, cities are also authorized to govern these activities. See,e.g., A.C.A. § 14-262-102 (authorizing cities of the first and second class to establish boards of health for the purpose of securing the city from various health hazards); A.C.A. § 14-47-130; A.C.A. § 8-6-211
(mandating that cities establish solid waste management systems, and authorizing cities to establish policies and enact laws concerning all phases of the operation of such systems); A.C.A. § 14-54-901 et seq.
(empowering cities to regulate unsanitary conditions); and A.C.A. §14-56-201 et seq. (authorizing cities to regulate concerning fire and sanitary hazards of buildings). (It should be noted that as with counties, the cities' authority is limited in that they cannot enact ordinances regarding these matters that are more restrictive than state or federal law. A.C.A. § 8-6-209; -211(e).)
As you have noted, in addition to the authority granted to cities in the above-cited statutes, cities sometimes have jurisdiction over the adjacent unincorporated area five miles outside their city limits, for purposes of planning. See 14-56-413. The cities' authority for purposes of planning, pursuant to A.C.A. § 14-56-401 et seq., includes the power to provide for "the appropriate and best use of land," and for "safety from fire and other dangers." A.C.A. § 14-56-403. It therefore appears that cities do have some power to enact ordinances that would regulate in the five-mile adjacent unincorporated area the same matters that are regulated by Ordinances 6.1, 6.2, and 6.3.
Because of this power of cities to regulate in the five-mile unincorporated area in which the county is also normally empowered to regulate, a question arises as to how a conflict between county and city in this area would be resolved. Such questions will always turn on the facts of each case, and upon precisely what authority both the county and the city are attempting to exercise. Op. Att'y Gen. No. 98-009, citingButler v. City of Little Rock, 231 Ark. 834, 332 S.W.2d 812 (1960) andYates v. Sturgis, 311 Ark. 618, 846 S.W.2d 633 (1993).
It is my opinion that in the event of a conflict between a city's regulations, validly enacted pursuant to A.C.A. § 14-56-413, and a county quorum court's regulations applicable to the five-mile unincorporated area adjacent to the city, the city's regulations should take precedence. I base this conclusion on the fact that the statute granting cities the authority to regulate in the five-mile area states that this authority is "exclusive."[1] A.C.A. § 14-56-413. A recognition of this exclusive authority of cities is also reflected in the statutes governing county planning. More specifically, A.C.A. § 14-17-208(i), which governs counties' authority to enact ordinances concerning subdivision, setback, and entry control ordinances, states:
 (i) In unincorporated areas adjoining the corporate limits of a municipality in which the authority to control the subdivision of land is vested and is being exercised in accordance with and under the provisions of 14-56-401—14-56-408 and 156-410-14-56-425, or any amendments thereto or thereof, or other acts of a similar nature enacted by the General Assembly, the municipal authority shall have subdivision jurisdiction but shall transmit copies of proposed plats for the areas to the board for review and comment, which shall be made to the municipal authority within sixty (60) days from the time it is received by the board unless further time is allowed by the municipal authority.
A.C.A. § 14-17-208(i) (emphasis added).
This statute (as well as the previously cited statute) indicates that if a city is exercising its authority in the five-mile adjacent unincorporated area, that authority is to be exclusive. (It should be noted that if the city is not exercising this authority, the county may regulate the area. See Op. Att'y Gen. No. 99-274.
I must note that the county court retains exclusive judicial jurisdiction over certain matters related to the regulation of the five-mile unincorporated area. See Ark. Const., Art. 7, § 28; Yates v. Sturgis,311 Ark. 618, 846 S.W.2d 633 (1993); Butler v. City of Little Rock,231 Ark. 834, 332 S.W.2d 812 (1960); Op. Att'y Gen. No. 97-181. Cities of course cannot undermine or override that constitutionally-granted authority of the county court. Op. Att'y Gen. No. 98-009 (opining that in the event of a conflict between a city and a county court's jurisdiction in a five-mile area, the county court should prevail). However, the authority of county quorum courts does not override the authority of cities to act pursuant to A.C.A. § 14-56-413. Amendment 55, § 1 of the Arkansas Constitution, which addresses matter of county government, states:
 (a) A county acting through its Quorum Court may exercise local legislative authority not denied by the Constitution or by law.
Ark. Const., am. 55, § 1 (emphasis added).
It is my opinion that when the General Assembly granted cities the "exclusive" authority to regulate planning in the five-mile adjacent unincorporated area, it was, in effect, denying that authority to the quorum courts. I therefore conclude that regulation of the adjacent unincorporated five-mile area is a legislative power that is denied by law to the quorum courts, and that under Amendment 55, § 1, quorum courts cannot exercise that authority if the city is doing so.
Assistant Attorney General Suzanne Antley prepared to foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
[1] An exception to cities' exclusive authority applies in cases where unincorporated areas are being developed with federal funds. See A.C.A. § 14-17-210.