UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-1102

PATRICIA HYATT,

Plaintiff - Appellant,

versus

TOWN OF LAKE LURE; H. M. PLACE, III; TERRI
POTTS; BLAINE COX; GEORGE PRESSLEY; LEA
HULLINGER,

Defendants - Appellees.

Appeal from the United States District Court for the Western
District of North Carolina, at Asheville. Lacy H. Thornburg,
District Judge. (CA-02-94-1)

Argued: September 28, 2004    Decided: November 10, 2004

Before WILKINSON and WILLIAMS, Circuit Judges, and Roger W. TITUS,
United States District Judge for the District of Maryland, sitting
by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** James Thomas Davis, Forest City, North Carolina, for
Appellant. Sandra Moody King, RUSSELL & KING, Asheville, North
Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Patricia Hyatt set out to develop her lakeside property. She believed that ordinances of the Town of Lake Lure permitted her to do this. Town authorities disagreed. In response to adverse land use decisions, Hyatt brought a panoply of federal and state constitutional claims. Included were such questions as where she could build an erosion-preventing seawall, whether she could construct a boathouse, and the consequences of invading her neighbors' property while simultaneously violating the Town's zoning requirements. Constitutional provisions do not ordinarily control such routine matters of local government administration. We therefore affirm the district court's grant of summary judgment for the Town on the federal constitutional claims. We additionally affirm the grant of summary judgment as to the state law claims because they also lack merit.

I.

The Town of Lake Lure, North Carolina ("Town"), acquired ownership of its namesake, Lake Lure ("Lake"), in 1965. As part of its regulation of local land use, and to protect the Lake, the Town has adopted a number of ordinances. Most important among them, in 1992 it enacted its Lake Structures Regulations ("LSRs") to govern construction along the Lake and to require an anti-erosion seawall

2

along the edge of the Lake for each lot with a lake structure.  A permit is required for any construction.

Appellant Patricia Hyatt acquired title to a lakefront parcel in April 2001.  Her property had suffered severe erosion at the shoreline -- a previous owner stated that there had been more than 15 feet of erosion in the past decade.  In June 2001 she applied for, and was granted, a Lake Structure Permit to construct a seawall and boathouse.  She made specific representations as to dimensions and took some very general plans to the Town for review at this time.  The Town also granted a Land Disturbance Permit for the construction of the boathouse and a driveway.

Hyatt's applications required her to accept conditions, including that "structures are allowed on Lake Lure only by permission of the town and the continued permission by the town to allow a structure on the lake does not confer any rights of ownership or possession."  She also had to acknowledge her responsibility for any damage to adjacent property from erosion caused by land disturbing activities.

In the fall of 2001, Hyatt's neighbor informed the Town that Hyatt's seawall had encroached upon his property.  The town reviewed surveys and performed its own physical inspection before concluding that he was correct -- she had invaded both of her neighbors' property.  And by building her seawall too far into the

3

Lake, and filling behind it, she had also encroached upon the Town's property.

The LSRs required that seawalls be built at 990 mean sea level, which the regulations equated with the shoreline. One part of the LSRs notes two methods for determining 990 MSL -- measuring down five feet from manholes which should be at 995 MSL, or calling and asking the Town. It prohibits filling in areas below the shoreline. Another provision proscribes any fills without Town approval. Hyatt made her own calculations and started work, such that her boathouse would extend far into the Lake. She proceeded to fill behind that point, leading to the complaint.

On November 21, 2001, the Town informed Hyatt of four LSR infractions, penalized her $500 for each, and warned her of further fines absent compliance. The violations concerned filling the Lake, failing to locate her seawall at the shoreline as it existed before the Lake was filled, locating the boathouse too far from the shoreline, and encroaching onto her neighbor's property. As the district court noted, "Hyatt's boathouse extended 43 feet out into the lake as opposed to the 30 feet required by the ordinances and the boathouse was not sufficiently far enough from the boundaries of each of the lots adjacent to Hyatt's property." Hyatt v. Town of Lake Lure, 314 F. Supp. 2d 562, 570 (W.D.N.C. 2003).

While considering the violations Hyatt's neighbor had raised, the Town inspected Hyatt's boathouse, and concluded that it did not

4

comply with the permit either.  It was marginally too big, and there was a deck top accessory structure that lacked a permit.  In any event, the Town extended the 30-day deadline to remedy the violations and allowed Hyatt to appear at the Town Council on January 14, 2002.  That meeting concerned Hyatt's request for an after-the-fact approval to fill a portion of the Lake and to waive fines.  On January 16, the Town denied her requests, telling her to either repair the situation, or apply for variances from the Lake Structures Appeals Board ("LSAB").  She sought the variances, and the LSAB, finding no special justification, denied them.  Hyatt appealed to the Town Council, and was represented by her attorney.  On May 14, the Council heard her arguments, including those based on the Constitution.  It denied her requests.

State law allows those disappointed with land use decisions to petition the state courts.  Hyatt filed suit in North Carolina state court, but stayed that suit to pursue her claims before a federal tribunal.  314 F. Supp. 2d at 579.  She brought suit against the Town and a number of its officials in the Western District of North Carolina.  Both her federal and state claims invoked procedural and substantive due process and equal protection, based on the Town's enforcement against her of the LSRs, especially the calculation of where the seawall should be located.  After protracted litigation over these and other claims,

5

the district court ruled in favor of the Town on all points, leading to this appeal.

## II.

We turn first to Hyatt's federal claims.  We review the district court's dismissal of these claims de novo.  Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 817 (4th Cir. 1995).

### A.

Hyatt argues that the LSRs violate her right to substantive due process because they are vague and arbitrary.  In particular, she claims that they provide for inconsistent methods of finding 990 mean sea level (MSL), the elevation at which she was to build her seawall.

First, we note that vagueness claims are traditionally aimed at statutes with such broad and capacious language that citizens cannot discern what is expected of them.  Here the ordinance states that 990 MSL can be found either by measuring down five feet from the manholes which are at 995 MSL, or "by calling the Town Office for the lake level reading at the dam on that particular day." Both methods are "sufficiently clear [] that people of common intelligence can determine the meaning of [their] terms."  Tri-County Paving, Inc. v. Ashe County, 281 F.3d 430, 441 n.9 (4th Cir. 2002).

The arguable inconsistency of the two methods is what Hyatt challenges. But Hyatt cannot show that she followed either of them. The district court found that "using either method, Hyatt's seawall was nowhere near the shoreline as it existed before the construction." 314 F. Supp. 2d at 574. We further agree with the district court's conclusion that "[t]he problem in this case is not that Hyatt could not ascertain the meaning of the regulation but that she constructed her seawall in either total disregard or without any consideration thereof." Id. at 576. Hyatt's elaborate discussion of horizontal and vertical distances do not alter the conclusion that she failed to follow either method of finding 990 MSL. Under such circumstances, a vagueness challenge to the LSRs cannot proceed.

Moreover, it is hardly insignificant that the LSR regulations explicitly invited Hyatt to contact the Town Office. This "safe harbor" provided Hyatt an avenue of clarification which she rejected. Hyatt's "ability to clarify the meaning of the regulation by [her] own inquiry, or by resort to an administrative process," Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498 (1982), further undermines her vagueness claim.

"The degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment." Id. Land use enactments are particularly resistant to facial

7

vagueness challenges, because zoning law is often given specific content through the very planning and permitting process that Hyatt sought to circumvent. The Constitution, however, was not intended to displace local zoning procedures. Rather, we have held that "[r]esolving the routine land-use disputes that inevitably and constantly arise among developers, local residents, and municipal officials is simply not the business of the federal courts. There is no sanction for casual federal intervention into what 'has always been an intensely local area of the law.'" Gardner v. Baltimore, 969 F.2d 63, 67 (4th Cir. 1992) (quoting Rose, Planning and Dealing: Piecemeal Land Controls as a Problem of Local Legitimacy, 71 Calif. L. Rev. 839, 839 (1983)).

We thus affirm the district court's rejection of Hyatt's vagueness and substantive due process claims.

B.

Hyatt also argues that the Town deprived her of procedural due process in requiring her to comply with the Notice of Violation and in denying her requests for variances. To succeed, Hyatt must demonstrate that she had a property interest which the Town deprived her of without due process of law. Sylvia, 48 F.3d at 826. But the procedures employed here satisfied due process. After all, "[t]he procedures due in zoning cases, and by analogy due in cases such as this one involving regulation of land use through general police powers, are not extensive." Tri-County, 281

8

F.3d at 436 (citing City of Eastlake v. Forest City Enters., Inc., 426 U.S. 668 (1976)).

As in Tri-County, Hyatt "was provided with more than constitutionally adequate pre-and-postdeprivation process in this case. [Hyatt] failed to take advantage of much of it. And when [she] did take advantage of the available process, the outcome was not what [she] had hoped for. But procedural due process does not require certain results -- it requires only fair and adequate procedural protections." Tri-County, 281 F.3d at 436. Hyatt's procedural opportunities, both pre-and-postdeprivation, were ample. After having been found by Town officials to be out of compliance with her permit and the LSRs, Hyatt was able to appeal to the Town Council. The Notice of Violation itself stated as much, and Hyatt seized the opportunity, as she should have. Her two opportunities to address the Town Council and the chance to appear before and seek variances from the LSAB show that hers is not one of the cases in which a municipality disregarded the fundamentals of fair process. Hyatt was represented by counsel, and Town officials considered her requests at some length. "[C]ertainly conducting open community meetings and giving affected parties the opportunity to speak on behalf of their project is constitutionally sufficient." Id. at 437.

In addition, Hyatt had the opportunity to pursue her case in state court. She chose to stay her state action, however. But

this again shows an unfortunate failure to grasp the import of circuit precedent. Tri-County involved a very similar procedural history, with claims parallel to Hyatt's. In concluding that TCP did not state a claim for a federal due process challenge, we described a variety of state court remedies that TCP could have sought. We noted, however, that "TCP chose not to pursue any of these avenues of relief in the state courts. It therefore cannot complain now that the state did not provide adequate procedures." Id. at 438. Hyatt is similarly disabled from challenging successfully the very remedies she chose not to pursue.

C.

Hyatt also claims that the Town violated her right to equal protection of the law under the Fourteenth Amendment. She argues that the Town subjected her to unprecedented scrutiny, and that it singled her out by taking up her neighbor's cause, using public power to vindicate his private interests. Equal protection claims like Hyatt's are reviewed under a rational basis standard, and fail if a challenged classification was rationally related to a legitimate governmental objective. FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993); Tri-County, 281 F.3d at 438-39.

Here the legitimate governmental purposes are self-evident. The Town has both the right and the duty to protect the environment and prevent overuse of the Lake. Regulations to determine each property owner's right to erect lakeside structures promote the

10

value of predictability in development for both residents and the Town.

The Town's actions in applying the ordinances to Hyatt were rationally related to such purposes. Limiting fills and development to the amount allowed by a permit serves to limit erosion and Lake shrinkage.

Nor was Hyatt, as she alleged, treated differently from others. See Village of Willowbrook v. Olech, 528 U.S. 562 (2000) (per curiam). "To prove that a statute has been administered or enforced discriminatorily, more must be shown than the fact that a benefit was denied to one person while conferred on another." Sylvia, 48 F.3d at 819. Hyatt fails to show even this. The Town, by contrast, has shown that others have been penalized for violating the LSRs. Indeed, the opposite of what Hyatt alleges is true: the LSAB concluded that were it to grant variances to Hyatt, with no extraordinary circumstances, it would "confer on [Hyatt] special privileges that are denied to other owners in the same district in which the property is located." Not every property can have the precise seawall or boathouse its owner desires. The environmentally sound and aesthetically pleasing preservation of the Lake justifies neutral regulations as to who can build, and how much.

In sum, we find no merit in Hyatt's equal protection claims.

D.

We affirm the grant of summary judgment as to Hyatt's remaining claims for the reasons given by the district court. We specifically decline to consider the merits of the challenge to the Sedimentation Control Ordinances, because Hyatt failed to adequately raise the issue in district court.

III.

Hyatt's federal claims have also been brought under corresponding provisions of the North Carolina Constitution. But "North Carolina courts have consistently interpreted the due process and equal protection clauses of the North Carolina Constitution as synonymous with their Fourteenth Amendment counterparts." Tri-County, 281 F.3d at 435 n.6. In Tri-County, the plaintiff alleged largely undifferentiated federal and North Carolina constitutional questions. Hyatt has likewise not shown any real distinction between her state and federal claims.

For these reasons, and for those given by the district court, we affirm the dismissal of the state law claims.

IV.

The judgment of the trial court is in all respects

AFFIRMED.

12