NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0481n.06
Filed: July 5, 2007

No. 05-6733

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CALEB WILSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JOSEPH E. JOHNSON, President of the | ) | EASTERN DISTRICT OF TENNESSEE |
| University of Tennessee; JAN SIMEK, | ) | |
| Interim Director of the University of | ) | |
| Tennessee School of Architecture; PAUL | ) | |
| LEE, Individually and as Director of the | ) | |
| University of Tennessee School of Art; | ) | |
| MARLENE DAVIS, Individually and as | ) | |
| Former Director of the University of | ) | |
| Tennessee School of Architecture; | ) | |
| EDWARD YOVELLA, Individually and as | ) | |
| Chief of the University of Tennessee Police | ) | |
| Department; RALPH MOLES, Individually | ) | |
| and in his Official Capacity; ROBERT | ) | |
| CUMMINGS, Individually and in his | ) | |
| Official Capacity; SCOTT BROOKS, | ) | |
| Individually and in his Official Capacity; | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before: GIBBONS and McKEAGUE, Circuit Judges; and BUNNING, District Judge.[*]

JULIA SMITH GIBBONS, Circuit Judge. Plaintiff-appellant Caleb Wilson appeals the

_____

[*]The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

-1-

district court's grant of summary judgment to the defendants-appellees, all officials of the University of Tennessee ("the University"), on his claims pursuant to 42 U.S.C. § 1983. Wilson claims that the defendants violated his rights under the First and Fourth Amendments when they allegedly removed painted messages and hanging banners that Wilson had placed on University buildings to protest the then-impending war with Iraq. Furthermore, Wilson claims that defendants violated his rights under the Fourteenth Amendment by promulgating a student disciplinary provision against vandalism that is too vague and by failing to provide sufficient notice of the University sign-posting policy. For the following reasons, we affirm the judgment of the district court.

I.

On February 13, 2003, Caleb Wilson, a student at the University of Tennessee, went to the University's Art and Architecture Building ("A&A") to make banners protesting the impending war with Iraq. Each of the banners was approximately three feet by six feet in size. Wilson hung three banners in the A&A, one from a balcony on the inside of the building and two outside the building. Wilson painted the words "NO WAR" in yellow paint on the exterior wall of the A&A, on the interior door of the elevator in the A&A, and on the front doors of the Stokely Athletic Center ("SAC"). Defendant Officer Robert Cummings of the University's police department arrived at the scene and arrested Wilson for vandalism, public intoxication, and evading arrest. After the arrest, defendant Officer Scott Brooks, also of the University's police department, arrived at the scene. After Wilson was taken to the police station, he admitted to painting on the A&A and SAC and hanging banners on the A&A without permission. Defendant Police Chief Edward Yovella was notified of the vandalism and the banners but was not told of their content. Yovella instructed his officers to return to collect the banners as evidence. Cummings and defendant Sergeant Ralph Moles

returned to the scene and found that a janitor had already taken down the banners. There is no evidence that any other signs, hung by other persons, were removed.

On the night of Wilson's arrest, an employee of the Facilities Services Department of the University who had responsibility for maintenance of the A&A and SAC received a call from an unnamed University police department dispatcher informing him that the buildings had been vandalized, that the investigation was complete, and that he "needed to take care of it." An independent contractor removed Wilson's graffiti, but other graffiti were not removed.

As of February 13, 2003, a number of University policies potentially applied to the incident. The official student handbook stated that exclusion from the University or a lesser penalty may result from misconduct, including: (1) "[v]andalism, malicious destruction, damage, or misuse of private or public property, including library material," (2) "[v]iolation of written University policies or regulations as stipulated herein or as promulgated and announced by authorized personnel," and (3) "[c]ommission of an act or an attempt to commit an act on University property . . . that would be in violation of state or federal law." The University also had published a Facilities Services Guide providing that the "general posting of notices and signs within campus buildings and on the grounds of the University is allowable only on Bulletin Boards provided for this purpose." Additionally, the Guide provided that the "posting and/or distribution of political and/or commercial signs and handbills is not permitted in campus buildings or on the grounds of the University."

At the time of the incident, numerous messages painted on walls and posted signs were on display in apparent violation of the stated University policies. There were no approved places for graffiti, and the painting of messages on the A&A and SAC was never permitted. Certain signs, regarding student displays of art or announcing student events, were encouraged but required

approval from the faculty before posting. Violations of the University's policies were universally viewed as a problem by University personnel, but practical and budgetary concerns prevented the immediate removal of offending graffiti and signs. Therefore, the removal of offending items was prioritized based upon how noticeable or intrusive the offending items were. The University did not post notices of its vandalism and sign posting policies on the walls of the A&A and SAC.

Wilson claims that, at the time of the incident, he did not know that painting on the structure of the A&A and SAC was a violation of University policy or state vandalism law. He stated that he believed that painting on the structure of the A&A and SAC was condoned because previous graffiti had not been removed and because he had not heard that it was deemed criminal. Wilson claims that he did not realize that it violated University policy to hang his banners from the A&A. Wilson made no efforts to determine whether his actions were in fact permitted.

Wilson filed a complaint in the district court alleging violations of his First, Fourth, and Fourteenth Amendment rights resulting from the removal of his painted messages and banners, his arrest without probable cause, and the promulgation and enforcement of vague University policies. In addition to defendants involved on the night of the incident (Brooks, Cummings, Moles, and Yovella, who were sued in their individual and official capacities), Wilson sued Dr. Joseph E. Johnson, President of the University, in his official capacity only, Jan Simek, interim Director of the School of Architecture, in his official capacity only, Paul Lee, Director of the School of Art, in his individual and official capacities, and Marlene Davis, Director of the School of Architecture at the time of the incident, in her individual and official capacities. The district court granted summary judgment for the defendants, holding that Wilson's paintings on the structure of the A&A and SAC were vandalism not protected by the First Amendment and that there was no evidence that any

defendant removed Wilson's banners because of the message they conveyed. The district court held that Wilson was estopped from claiming his arrest was without probable cause because the issue was resolved in his state criminal proceedings when he pled guilty to evading arrest. Finally, the district court held that the University's policies were not vague and provided fair notice concerning unacceptable conduct. Wilson filed a timely notice of appeal but does not appeal the claim of arrest without probable cause.

## II.

A district court's grant of summary judgment is reviewed *de novo*. *McWane, Inc. v. Fidelity & Deposit Co. of Md.*, 372 F.3d 798, 802 (6th Cir. 2004). Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). This court, reviewing the record taken as a whole, views the evidence and draws all inferences in the light most favorable to Wilson, the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, a mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## A.

Wilson argues that he had a First Amendment right to paint messages and hang banners protesting the war in Iraq on the A&A and SAC and that his speech was discriminated against based on its content.

Although Wilson's banners may constitute political protest protected under the First Amendment, such speech is not "equally permissible in all places and at all times." *Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985). "The Supreme Court has

adopted a forum analysis for use in determining whether a state-imposed restriction on access to public property is constitutionally permissible." *United Food & Commercial Workers Union, Local 1099 (UFCWU) v. S.W. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 349 (6th Cir. 1998). This court has classified public property as one of three types of fora: (1) the traditional public forum, (2) the designated public forum, and (3) the nonpublic forum. *Putnam Pit, Inc. v. City of Cookeville, Tenn.*, 221 F.3d 834, 842 (6th Cir. 2000). All public properties that are not traditional public fora or designated public fora are nonpublic fora. *See Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678-79 (1992).

As Wilson concedes that the A&A and SAC do not constitute traditional public fora, the court must only determine whether they are designated public fora or nonpublic fora. A designated public forum is an otherwise nonpublic forum from which the government has designated "a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." *Cornelius*, 473 U.S. at 802; *see Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (noting that the government is "not required to create the forum in the first place"). "The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening up a nontraditional forum for public discourse." *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 749 (6th Cir. 2004) (citing *Cornelius*, 473 U.S. at 802). "A designated public forum is not created when the government allows selective access for individual speakers rather than general access for a class of speakers." *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 679 (1998). To determine whether the University intended to create a designated public forum, the court looks to the "government's policy and practice with respect to the forum, as well

as to the nature of the property at issue and its 'compatibility with expressive activity,'" and the "context within which the forum is found." *Kincaid v. Gibson*, 236 F.3d 342, 349 (6th Cir. 2001) (*en banc*) (quoting *Cornelius*, 473 U.S. at 802).

Wilson argues that the structure of the A&A and SAC are designated public fora on which the University allows expressive painting and the hanging of banners. Therefore, it was inappropriate for the district court to dismiss Wilson's painted messages as vandalism that is not protected by the First Amendment. If Wilson's forum analysis were correct, his painted messages would be not be vandalism because painting would be permitted.

However, Wilson has provided no evidence from which to conclude that the A&A and SAC are designated public fora. The University's policies are clear and unambiguous. There is no policy granting permission to paint messages, and painting messages without permission would constitute vandalism, *see* Tenn. Code Ann. § 39-14-408, which is a violation of the standards of conduct. The posting of signs is permitted only on a designated bulletin board. In fact, Wilson concedes that "these written rules, taken together, do seem to establish a written policy that prohibits the type of sign posting in which [Wilson] engaged." Rather, Wilson argues that the University's practices were inconsistent with its stated policy because it failed to "consistently clean up or remove the signs" or notify the public of its policy. However, as the University "does not create a public forum by inaction," this provides no evidence of intent. *City of Sidney*, 364 F.3d at 749. *But see United States v. Kokinda*, 497 U.S. 720, 737-38 (1990) (Kennedy, J., concurring in the judgment) (arguing that objective characteristics and customary use by the public may control forum designation over government intent). To the extent that signs were permitted, they required faculty approval and do not represent the general access required of a designated public forum. *See Forbes*, 523 U.S. at 679.

Furthermore, the nature of the property is no more compatible with expressive activity than any other flat surface, and although the context is one of a university that is "the quintessential marketplace of ideas," *Kincaid*, 236 F.3d at 352 (internal quotation omitted), that context does not preclude "reasonable regulations compatible with th[e] mission [of education]," *Widmar v. Vincent*, 454 U.S. 263, 267 n.5 (1981). Thus, there is an absence of evidence that the University intended to create a designated public forum.

Because the A&A and SAC are nonpublic fora, the government may control access "'based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral.'" *Kincaid*, 236 F.3d at 348 (quoting *Cornelius*, 473 U.S. at 806). Wilson does not dispute that the University's policy is facially reasonable and viewpoint neutral. He alleges that the policy was applied to him in a discriminatory manner based upon the viewpoint of his speech. The only claimed evidence of viewpoint discrimination is that Wilson's painted messages and banners were removed promptly while others were not. However, undisputed evidence indicates that, due to practical and budgetary concerns, removal of unauthorized painting and banners was prioritized based upon their prominence. In the absence of any other evidence, the only reasonable conclusion is that Wilson's banners were promptly removed because they were unusually noticeable and intrusive, not because of the viewpoint they expressed.

Furthermore, in a nonpublic forum, the government can make reasonable regulations based upon subject matter. *Kincaid*, 236 F.3d at 348. To the extent that University practice allowed the hanging of banners, they were as a "means for communicating student events." Given the purpose of the fora to provide a location for student education and enrichment, it is reasonable for the

-8-

University to allow announcements of activities and prohibit political messages.

Finally, even if the court concluded that there was evidence of viewpoint discrimination, there is no evidence that any of the defendants participated in that discrimination. "Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun County*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). There is no evidence that defendants Davis, Johnson, Lee, Simek, and Yovella were aware of the content of the painted messages or banners prior to their removal. Although the remaining defendants, Brooks, Cummings, and Moles, were aware of the content of the banners, there is no evidence that they either removed, or instructed the removal of, the banners.

Therefore, Wilson has failed to demonstrate evidence that the removal of the painted messages or banners was a violation of his First Amendment rights.

B.

Wilson's argument that his Fourth Amendment rights were violated by the seizure of his banners is without merit. As noted above, there is no evidence that any of the defendants were involved with the removal of the banners. Furthermore, the Fourth Amendment is not violated through the search or seizure of "abandoned" property, property in which a person can no longer claim a continuing, legitimate expectation of privacy. *United States v. Robinson*, 390 F.3d 853, 873-74 (6th Cir. 2004). Wilson cannot claim any expectation of privacy in the banners that he left hanging in public places.

C.

Wilson's argument that the University's policy prohibiting vandalism is unconstitutionally vague under the Fourteenth Amendment has no merit. Due process requires that a state enactment

is "void for vagueness if its prohibitive terms are not clearly defined such that a person of ordinary intelligence can readily identify that applicable standard for inclusion and exclusion." *UFCWU*, 163 F.3d at 358-59. Although vandalism is not defined in the University's disciplinary policy, the policy is not vague if the meaning of the term can easily be determined without undue burden. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 501 n.18 (1982). The most obvious definition is found in Tennessee law, which provides that a person is guilty of vandalism if he "knowingly causes damage to or the destruction of any real or personal property of another . . . knowing that the person does not have the owner's effective consent." Tenn. Code Ann. § 39-14-408(a). Any concern that a person could unwittingly expose himself to punishment due to the vagueness of the definition of vandalism is overcome by the requirement of knowledge. *See United States v. Caseer*, 399 F.3d 828, 839 (6th Cir. 2005). Furthermore, the University is under no obligation to ensure every person has "specific" notice of its policies. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1105 (6th Cir. 1995) ("The requirement of fair notice is not applied mechanically or without regard for the common sense judgment that people do not review copies of every law passed."). Its policies were published and generally available to anyone interested in learning of them. Assuming for the sake of summary judgment that Wilson could plausibly have believed that he was allowed to paint on the buildings and post his banners, he made no effort to discover whether his actions were prohibited. Ignorance of the law, particularly willful ignorance such as Wilson exhibited in this case, is no defense. *See Caseer*, 399 F.3d at 835.

III.

For the foregoing reasons, we affirm the district court's decision.